Barbara SPEARS and Jerel Saeler *v.* CITY OF FORDYCE,
Joseph Watson, Arkansas Public Risk Management Association,
and Southern Farm Bureau Casualty Insurance Company

01-220 92 S.W.3d 38

Supreme Court of Arkansas
Opinion delivered December 12, 2002

*Jewell, Moser, Fletcher & Holleman,*by: *John T. Holleman, IV* and *Paul Pfeifer*, for appellants.

*Batchelor & Newell*, by: *Angela R. Echols*; and *Ralph C. Ohm*, for appellees City of Fordyce, Joseph Watson, and Arkansas Public Risk Management Association.

*Wright, Chaney, Berry, Daniel, Hughes & Moore, P.A.*, By: *Rodney P. Moore*, for appellee Southern Farm Bureau Casualty Insurance Company.

R AY THORNTON, Justice. On May 8, 1997, appellant, Barbara Spears, was driving a car owned by appellant, Jerel Saeler, when a Coyote C-26 front-end loader, which was owned by appellee, the City of Fordyce, and operated by appellee, Joseph Watson, collided with the car. When the accident occurred, Mr. Watson was driving the front-end loader on the highway through a school zone to an area in Fordyce where he intended to "clip shoulders."[1]

---

[1] Mr. Watson explained that this is a procedure whereby dirt is removed from the side of the road, and the road is smoothed over before oil and pea gravel are placed on the road.

On April 26, 2000, appellants filed a complaint against the City of Fordyce, Joseph Watson, and the Arkansas Public Entities Risk Management Association. The complaint alleged that appellants suffered physical injuries and property damages as a result of the City of Fordyce and Joseph Watson's negligence.

On May 24, 2000, appellants filed their first amended and substituted complaint. In this complaint, appellants realleged all claims and allegations against the City of Fordyce, Joseph Watson, and the Arkansas Public Entities Risk Management Association. Additionally, appellants claimed that they were entitled to receive benefits from appellee, Southern Farm Bureau Casualty Insurance Company, based on an underinsured motorist policy.

On May 26, 2000, the City of Fordyce, Joseph Watson, and the Arkansas Public Entities Risk Management Association filed a motion for summary judgment. The appellees argued that because the City of Fordyce is a governmental entity, it is entitled to immunity from tort liability. The appellees further contended that Mr. Watson was entitled to immunity because the accident occurred while he was performing his duties as a government employee. Finally, citing *Cousins v. Dennis*, 298 Ark. 310, 767 S.W.2d 296 (1989), the appellees argued that the City was not required to carry liability insurance on the front-end loader because it was not a motor vehicle.

On June 29, 2000, appellants filed a second amended and substituted complaint once again re-alleging previous claims. In this complaint, appellants claimed that they were entitled to recover the entire policy limits from an uninsured motorist policy if the trial court determined that the City of Fordyce, Joseph Watson, and the Arkansas Public Entities Risk Management Association were immune from suit.

On August 4, 2000, a hearing was held on the motion for summary judgment. On November 2, 2000, the trial court granted the motion. The trial court, relying on Ark. Code Ann. § 21-9-301 (Repl. 2001), determined that the City of Fordyce was immune from liability except to the extent of coverage by liability insurance. The trial court further found that insurance

coverage was not required for the front-end loader because it was "special mobile equipment" pursuant to Ark. Code Ann. 27-14-211 (Repl. 1994), and as such was not subject to registration with the State pursuant to Ark. Code Ann. § 27-14-703 (Repl. 1994). Based on these findings, the trial court concluded that there was no material issue of fact for determination by a jury.

On November 10, 2000, appellee Southern Farm Bureau Casualty Insurance Company filed a motion for summary judgment. Farm Bureau argued that appellants' claims for benefits from their uninsured motorist policy were improper because the front-end loader was not an "auto" as defined in the policy.

On November 20, 2000, a hearing was held on Farm Bureau's motion. On November 29, 2000, the trial court entered an order granting Farm Bureau's motion. The trial court concluded that a front-end loader was special mobile equipment and was not a vehicle that was designed primarily to be used on public roads. Based on this finding, the trial court concluded that appellants could not recover from their uninsured motorist policy.

It is from these orders that appellants appeal. They raise two points for our review. We reverse the trial court's order, and remand the matter for development of unresolved questions of fact.

■ ■ In their first point on appeal, appellants contend that the trial court erred when it granted the motion for summary judgment filed by the City of Fordyce, Joseph Watson, and the Arkansas Public Entities Risk Management Association. Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Baldridge v. Cordes*, 350 Ark. 114, 85 S.W.3d 511 (2002). Once the moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unan-

swered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

Appellants challenge several of the findings upon which the trial court relied in granting the motion for summary judgment. First, appellants argue that the trial court erred in concluding that the City was entitled to tort immunity. Next, appellants contend that the trial court erred when it determined that the City was not required to maintain insurance on the front-end loader. Finally, appellants argue that the trial court erred when it determined that the front-end loader was not a motor vehicle.

 In addressing appellants' contention, we must start with the basic principle that:

> all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance. No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

Ark. Code Ann. § 21-9-301. Pursuant to the statute, the City enjoys immunity from liability and from suits for damages except to the extent that it is covered by liability insurance, or acts as a self insured for certain amounts as provided by statute.

 With this basic principle in mind, we then look to Ark. Code Ann. § 21-9-303 (Repl. 1996) for guidance on maintaining liability insurance. The statute provides:

> (a) All political subdivisions shall carry liability insurance on their motor vehicles or shall become self-insurers, individually or collectively, for their vehicles, or both, in the minimum amounts prescribed in the Motor Vehicle Safety Responsibility Act, § 27-19-101 *et seq.*

* * *

(c) Any person who suffers injury or damage to person or property caused by a motor vehicle operated by an employee, agent, or volunteer of a local government covered by this section shall have a direct cause of action against the insurer if insured, or the governmental entity if uninsured, or the trustee or chief administrative officer of any self-insured or self-insurance pool. Any judgment against a trustee or administrator of a self-insurance pool shall be paid from pool assets up to the maximum limit of liability as herein provided.

Ark. Code Ann. § 21-9-303. Pursuant to the statute, the City must carry liability insurance on its motor vehicles, or assume statutory responsibility as a self-insured.

■ Based on this language, we consider whether the City's front-end loader, which collided with Mr. Saeler's car, was a "motor vehicle" as that term is used in the statute. Arkansas Code Annotated § 27-19-206 (Repl. 1994) defines a "motor vehicle" as "every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires but not operated upon rails." *Id.* This definition is a broad declaration that every self-propelled vehicle that does not operate on rails is a "motor vehicle." However, our analysis does not end with this broad definition. In *Cousins v. Dennis*, 298 Ark. 310, 77 S.W.2d 296 (1989), a case somewhat similar to the one now on review, we articulated a test that accompanies the statutory definition, and which may be used to determine whether the front-end loader is a motor vehicle.

■ In *Cousins*, a student was injured by a bush-hog mower being pulled by a tractor. The school district did not maintain liability insurance on the tractor. The injured student argued that the tractor was a motor vehicle and that pursuant to Ark. Code Ann. § 21-9-303 the school was required to carry liability insurance on the tractor. The school district argued:

21-9-303(a) requires insurance on motor vehicles in the minimum amounts prescribed in the Motor Vehicle Safety Responsibility Act, 27-19-101 *et seq.* By referring to 27-19-101 *et seq.*, the General Assembly obviously intended that the insurance coverage required of political subdivisions under 21-9-303(a) should

be subject to all of the provisions of the Motor Vehicle Safety Responsibility Act.

*Cousins, supra.* We agreed with the school district's contention, and looked to the Motor Vehicle Responsibility Act for guidance in our determination of whether a tractor was a motor vehicle. We explained:

> Ark. Code Ann. 27-19-605 and 27-19-713 (1987) provide the minimum amounts of liability insurance coverage for a security deposit or proof of further financial responsibility required under the Act. As we noted earlier, a school district becomes a self-insurer, if found liable, in an amount not to exceed those minimum amounts. The minimum liability insurance amounts required under these statutory provisions, subject to certain exceptions, apply to the driver and owner of *any vehicle of a type subject to registration under the motor vehicle laws of this state*, Ark. Code Ann. 27-19-601 (1987), and to persons who have been convicted of or forfeited bail or who have failed to pay judgments upon causes of action arising out of ownership, maintenance, or use of *vehicles of a type subject to registration under the laws of this state.* Ark. Code Ann. 27-19-702 (1987).

> \* \* \*

> We believe the General Assembly, in requiring political subdivisions to purchase motor vehicle liability insurance, never intended non-registered vehicles to be covered. In passing § 21-9-303, the legislature undoubtedly was aware of how Arkansas's Motor Vehicle Responsibility Act and vehicle registration laws worked together in requiring security deposits and liability insurance coverage only on those vehicles which are subject to registration.

*Cousins, supra.* (emphasis supplied)(internal citations omitted).

Relying upon Arkansas's motor vehicle registration laws, we determined that the tractor, which injured the student, was an "implement of husbandry" and as such was not subject to registration with the State. *Id.* Because the tractor was not subject to registration, we reasoned that it was not a "motor vehicle" as that term is used in Ark. Code Ann. § 21-9-303. Accordingly, we

held that the school district was not required to maintain liability insurance on the tractor. *Cousins, supra.*

We now consider whether the trial court was correct in concluding that the City's front-end loader was not a motor vehicle as a matter of law. As we begin our analysis, in accordance with our decision in *Cousins, supra*, we first consider whether the front-end loader is subject to registration under Arkansas's motor-vehicle laws. Arkansas Code Annotated § 27-14-703 describes the vehicles that are subject to registration. The statute provides:

> Every motor vehicle, trailer, semitrailer, and pole trailer when driven or moved upon a highway and every mobile home shall be subject to the provisions of this chapter except:
>
> (1) Any vehicle driven or moved upon a highway in conformance with the provisions of this chapter relating to manufacturers, transporters, dealers, lienholders, or nonresidents or under a temporary registration permit issued by the office as authorized in 27-14-708;
>
> (2) Any vehicle which is driven or moved upon a highway only for the purpose of crossing such highway from one (1) property to another;
>
> (3) Any implement of husbandry whether of a type otherwise subject to registration under this chapter or not which is only incidentally operated or moved upon a highway;
>
> (4) Any special mobile equipment as defined in 27-14-211;
>
> (5) Any vehicle which is propelled exclusively by electric power obtained from overhead trolley wires, though not operated upon rails;
>
> (6) No certificates of title need be obtained for any vehicle of a type subject to registration owned by the federal government.

Ark. Code Ann. § 27-14-703.

In the case now before us, the trial court determined that the City's front-end loader was "special mobile equipment" as a matter of law, and as such fit within an exception to the vehicle registration requirement. Arkansas Code Annotated § 27-14-211 defines special mobile equipment. The statute provides:

> Special mobile equipment means every vehicle not designed or used primarily for the transportation of persons or property and incidentally operated or moved over the highways, including farm tractors, road construction or maintenance machinery, ditch-digging apparatus, well-boring apparatus, and concrete mixers.

*Id.*

In their motion for summary judgment, the City of Fordyce, Joseph Watson, and the Arkansas Public Entities Risk Management Association did not present evidence as to whether the front-end loader met the definition of special equipment. The appellees argued instead that "a tractor, such as a front-end loader involved in this case, is not a motor vehicle as that term is used under the statutes, and does not require insurance." Additionally, the appellees discussed the rules outlined in *Cousins*, and argued that "for the same reasons expressed in the *Cousins* case, the separate defendants in the present case are immune from liability. . .[.]"

In their response to the motion for summary judgment, appellants argued that the front-end loader was not excepted from the statutory definition of a motor vehicle because it was "routinely being driven along [the] streets of Fordyce for transportation purposes." Appellants offered the depositions of Joseph Watson in response to the motion for summary judgment. In his deposition, Mr. Watson stated that the front-end loader was frequently driven on public streets. He also explained that the front-end loader was used on numerous jobs around the City. Specifically, Mr. Watson explained that the front-end loader performed many duties such as clipping shoulders, cleaning ditches, loading gravel, back-dragging asphalt, and picking up brush. Appellants also offered the deposition of William Lyon, the Mayor of Fordyce. In his deposition, Mr. Lyon testified that the only way the City could transport the front-end loader was to drive it on public roads.

At the hearing on the motion, the City of Fordyce, Joseph Watson, and the Arkansas Public Entities Risk Management Asso-

ciation argued that the front-end loader did travel on the public roads, but that the travel was a necessary requirement of its job. In response to this contention, appellants argued that the front-end loader was not "just incidentally driven along the highway" but that "it was being driven as transportation along the highway."

On this issue, the trial court found:

> [T]he front-end loader tractor here was not used primarily for transportation but operated on the public roads incidentally due to its intended purpose in the construction or repair and maintenance of roads.

■ After reviewing the evidence, we conclude that a genuine issue of material fact remains to be resolved. We conclude that appellants raised a genuine issue of fact as to whether the operation of the front-end loader on public roads was frequent and regular or merely incidental. Until this disputed factual question is resolved, it is impossible to determine whether the front-end loader is excepted from the statutory definition of "motor vehicle." Accordingly, the trial court erred when it granted the motion for summary judgment filed by the City of Fordyce, Joseph Watson, and the Arkansas Public Entities Risk Management Association, and we remand for resolution of the factual issues.

■ In their second point on appeal, appellants argue that the trial court erred when it granted Farm Bureau's motion for summary judgment. We conclude that the motion for summary judgment was premature. Specifically, we conclude that the issue of whether appellants may recover from Farm Bureau is not ripe for consideration until the issue of whether the City was required to carry insurance on the front-end loader is resolved. Because we have determined that this issue is not yet resolved, any consideration by the trial court of a motion for summary judgment in favor of Farm Bureau was premature, and any review by this court of the disposition of such a motion would also be premature. Accordingly, we decline to consider the merits of appellants' second point on appeal.

Reversed and remanded.

GLAZE, J dissents.

TOM GLAZE, Justice. I respectfully dissent. The law is
well established that political subdivisions are immune
from liability for damages. *See Cousins v. Dennis,* 298 Ark. 310, 77
S.W.2d 296 (1988); Ark. Code Ann. § 21-9-301 (1987). How-
ever, under Ark. Code Ann. § 21-9-303(a) (Repl. 1996 and Supp.
2001), a political subdivision (like the City of Fordyce here) shall
carry liability insurance on its motor vehicles in the minimum
amounts prescribed in the Motor Vehicle Safety Responsibility
Act, Ark. Stat. §§ 27-19-101 (1987), *et seq.*

In *Cousins,* this court held that the General Assembly, in
requiring political subdivisions to purchase such liability insurance,
never intended non-registered vehicles to be covered. The *Cous-
ins* court further held that, in applying Arkansas' registration laws,
mowers and other vehicles not designed for transportation pur-
poses are designated as special mobile equipment and exempted
from registration. *See* Ark. Code Ann. §§ 27-14-703(4) and 27-
14-211 (Repl. 1987). Stated in other terms, the court concluded
that self-propelling mowers and other equipment not designed or
intended for transportation purposes are not required to comply
with the insurance provisions required under § 21-9-303(a).
Accordingly, in *Cousins,* the court held that a school district's
bush-hog mower was *not designed for transportation purposes* and was
exempt as special mobile equipment as defined in § 27-14-211,
which exempted such equipment from the state's vehicle registra-
tion laws.[1]

In the present case, the majority court does not seriously
suggest that the City of Fordyce's 16,000 pound Coyote C-26
front-end loader is designed or intended for transportation pur-
poses. However, the majority opinion does submit that a genuine
issue of fact exists on whether the front-end loader is exempt from
the state vehicle registration as "special mobile equipment." Ark.
Code Ann. § 27-14-211 provides as follows:

---

[1] The *Cousins* court also concluded that the school district's mower was an
"implement of husbandry," under Ark. Code Ann. § 27-14-212 (Repl. 1994), and was
specifically exempted from vehicle registration laws.

> Special mobile equipment means every *vehicle not designed or used primarily for the transportation of persons or property and incidentally operated or moved over the highways, including* farm tractors, *road construction or maintenance machinery*, ditch-digging apparatus, well-boring apparatus, and concrete mixers. (Emphasis added.)

The majority bores in on the above statute and suggests the evidence is enough to raise a factual dispute as to whether the city's front-end loader is "used primarily for transportation on public roads," and, therefore, is not exempt from the vehicle registration laws as special motor equipment. The majority opinion premises its position on the deposition of Joseph Watson, who was driving the city equipment when it collided with plaintiff Barbara Spears's car. Watson averred that he drove his front-end loader frequently on public streets, and the equipment was used on numerous jobs around the city. The Mayor of Fordyce, William Lyon, said that the only way the city could transport its front-end loader was to drive it on public roads. In short, the plaintiffs/appellants argue that the front-end loader was not just incidentally driven along the highway, but, instead, it was driven as transportation along the highway.

The plain language of § 27-14-211 exempts from vehicle registration laws any equipment not designed or *used primarily* for transportation of persons or property *and incidentally* operated or moved over the highways," *including . . . road or maintenance machinery.*" It seems abundantly clear that a 16,000 pound front-end loader is neither designed nor intended to be primarily used for transportation purposes on the public roads or highways. In fact, as the majority opinion relates, Watson used the front-end loader to "clip shoulders alongside public roads, clean ditches, fix sewer and water lines, dump asphalt into holes on the street, and pick up brush." Obviously, the equipment was designed and being primarily used to do road repair and maintenance jobs, and, here, the operator's driving of the equipment was incidental to getting the front-end loader to where he would perform these maintenance jobs.