## HOLT BONDING CO. *v.* FIRST FEDERAL BANK OF ARKANSAS

CA 02-735                                    110 S.W.3d 298

Court of Appeals of Arkansas
Division I
Opinion delivered April 30, 2003

*Price Law Firm*, by: *Robert J. Price*, for appellant.

*Estes & Gramling, PLC*, by: *Amy C. Estes*, for appellee.

JOHN MAUZY PITTMAN, Judge. This appeal is brought from two orders of summary judgment entered in favor of appellee First Federal Bank. As a result of the first order, appellant Holt Bonding Company was held liable for $24,000 as an endorser on a check; as the result of the second order, Holt's counterclaim against First Federal for conversion and negligence was dismissed.

On appeal, Holt argues that summary judgment was inappropriate because genuine issues of material fact remain on its liability as an endorser and on First Federal's liability for conversion and negligence. We affirm.

Holt writes appearance bonds in connection with judicial proceedings. It has agency relationships with a number of professional bail bondsmen in Baxter, Boone, Stone, and Washington counties. On December 9, 1998, Holt entered into an agency agreement with John Van Curen, a bail bondsman in Washington County. The agreement provided that Van Curen would write bonds for Holt, collect premiums, and send Holt weekly reports accompanied by fifty percent of the premiums collected. Under the terms of the agreement, all premiums were considered fiduciary funds held by Van Curen on behalf of Holt. It is undisputed that Van Curen had the authority to endorse Holt's name on checks made payable to Holt.

On October 6, 2000, Van Curen opened a checking account at First Federal Bank in the name of Van Curen's Rapid Recovery LLC. On October 13, 2000, he issued an appearance bond to Roberto Bravo, for which Zoila Ruano remitted a $24,000 check made payable to Holt Bonding. Van Curen endorsed the check

"Holt Bonding" and underneath that "John Van Curen." He then deposited the check into his LLC account at the Bank.

Between October 14 and 17, 2000, Van Curen made four cash withdrawals from the account at various First Federal branches until he had withdrawn the entire $24,000. On October 23, 2000, Ruano's check was returned to First Federal marked insufficient funds.

On October 31, 2000, the Bank sued Holt, Van Curen, and Rapid Recovery LLC, claiming that they were liable for the $24,000 by virtue of the endorsements on the check. Holt answered that, while Van Curen was its agent and was generally authorized to issue appearance bonds, endorse checks, and deposit checks into his account, he was not acting in the course and scope of his agency when he endorsed and deposited the Ruano check.

Following discovery, First Federal filed a motion for summary judgment, arguing that, as a matter of law, Van Curen was Holt's agent for the purpose of endorsing the $24,000 check and, when he endorsed Holt's name, Holt became liable as an endorser under the provision of the Uniform Commercial Code contained at Ark. Code Ann. § 4-3-415 (Repl. 2001), which reads:

> Subject to subsections (b), (c), and (d) and to 4-3-419(d) [not applicable here], if an instrument is dishonored, an indorser is obliged to pay the amount due on the instrument (i) according to the terms of the instrument at the time it was indorsed, or (ii) if the indorser indorsed an incomplete instrument, according to its terms when completed, to the extent stated in 4-3-115 and 4-3-407. The obligation of the indorser is owed to a person entitled to enforce the instrument or to a subsequent indorser who paid the instrument under this section.

Holt responded that a fact question remained as to whether Van Curen was acting in the course and scope of his agency when he endorsed and deposited the check. Holt also argued that First Federal should not have allowed Van Curen to deposit the check into the LLC account and then withdraw the entire proceeds, and that Van Curen had already repaid the $24,000 to First Federal. After a hearing, the trial court ruled that Van Curen was author-

ized to endorse premium checks and deposit them in his account and that, by reason of the endorsement of Holt's name, the Bank was entitled to judgment against Holt for $24,000 as a matter of law. Following this grant of summary judgment, the trial court granted summary judgment against Holt on a counterclaim that had been filed by Holt in which Holt alleged that First Federal was liable for conversion for allowing Van Curen to endorse and deposit the check into the LLC account without first contacting Holt to determine if he had the authority to do so. Holt now appeals from those two orders.

Before we address the propriety of the summary judgments, we direct our attention to two evidentiary arguments made by Holt. The first concerns requests for admission that First Federal propounded to Van Curen, which were not answered within the required thirty-day period. First Federal attached the requests to its motion for summary judgment, claiming that, by virtue of Van Curen's failure to answer, certain matters were deemed admitted, including that Van Curen endorsed the premium check for Holt, that he was authorized to deposit bond premiums in his checking account, and that he withdrew $24,000 for the benefit of Holt. Holt argues that the trial court erred when it treated Van Curen's unanswered requests as admissions by Holt.

In its brief, Holt admits that the trial court made no specific finding regarding the admissions when granting summary judgment. Our review of the court's order and comments from the bench likewise reveals no reliance by the trial court on Van Curen's unanswered requests. Therefore, even if consideration of the admissions would have been error, we decline to reverse on this point because it is clear that the trial court based its ruling on evidentiary attachments other than the requests for admissions. *See Barnett v. Arkansas Transp. Co.*, 303 Ark. 491, 798 S.W.2d 79 (1990) (holding that the trial court's mention of the collateral source rule in excluding evidence was not applicable to issues on appeal where it was clear that the court based its exclusion on ground of irrelevancy); *Freeman v. Freeman*, 20 Ark. App. 12, 722 S.W.2d 877 (1987) (holding that any possible error by trial court in taking judicial notice was harmless where is was clear that the court's ruling was based on other grounds).

The other evidentiary matter concerns certain attachments associated with Holt's claim that Van Curen had repaid the $24,000 to First Federal. Holt asserted this defense by way of an affidavit by its president, John Holt, stating that "Van Curen represented to me that all of the monies he had withdrawn from the bank had been repaid to the bank on December 21, 2000, and he provided me by facsimile with a copy of a receipt for $24,000 in cash on March 21, 2001." The faxed copy that purported to be a receipt indicated a deposit of $24,000 to the LLC account on December 21, 2000, and it bore a small round postmark-type stamp with the name "First Federal of Harrison."

At the hearing on the motion for summary judgment, the Bank objected that Holt's statement and the receipt were hearsay and that the receipt was forged and should not be considered by the court. Holt agreed that hearsay was not generally admissible for the purpose of a summary-judgment motion but argued that the evidence was either an admission of a party opponent or, in the case of the receipt, a record of a regularly conducted business activity. The trial judge ruled that no foundation had been laid to establish that the receipt fell within the business records exception and that the statement in the affidavit was not an admission but rather a denial of liability. Holt argues on appeal that the trial court erred when it so ruled.

Affidavits in support of or opposition to a motion for summary judgment must be made on personal knowledge and shall set forth such facts as would be admissible in evidence. Ark. R. Civ. P. 56(e). The supreme court has excluded hearsay statements from the summary-judgment analysis since such statements would be inadmissible at trial. *See, e.g., Swindle v. Lumbermens Mut. Cas. Co.*, 315 Ark. 415, 869 S.W.2d 681 (1993); *Brewington v. St. Paul Fire & Marine Ins. Co.*, 285 Ark. 389, 687 S.W.2d 838 (1985). However, this court has considered hearsay evidence in an affidavit where we determined that it could be subject to a hearsay exception. *See Baxley v. Colonial Ins. Co.*, 31 Ark. App. 235, 792 S.W.2d 355 (1990).

If Holt is to take advantage of the *Baxley* holding, it needs to convince us that the evidence could fall within a hearsay

exception. However, it has failed to do so. Holt offers no authority or convincing argument that the evidence constitutes either an admission of a party opponent, in which case it would not be hearsay under Ark. R. Evid. 801(d)(2) (2002), or a regularly kept business record, in which case it would be excepted from the hearsay rules under Ark. R. Evid. 803(6) (2002). We do not address points on appeal that are not supported by convincing argument or authority. *Parker v. Parker*, 75 Ark. App. 90, 55 S.W.3d 773 (2001).[1]

■ Having narrowed the issues by disposing of the above evidentiary questions, we turn now to whether the trial court erred in granting summary judgment on First Federal's claim against Holt. Our standard of review in summary judgment cases is well established. Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the party is entitled to judgment as a matter of law. *Spears v. City of Fordyce*, 351 Ark. 305, 92 S.W.3d 38 (2002). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

Holt argues that summary judgment was inappropriate because the issue of whether Van Curen was acting within the scope of his authority when he endorsed and deposited the check

---

[1] In any event, Holt has not shown that a qualified person or custodian would offer the receipt into evidence, as required for application of the business-records exception, nor has it shown that the receipt or the statements in the affidavit constitute admissions by First Federal, being that they are the statements of another person (Van Curen) who is not an agent of First Federal and is in fact in a position adverse to First Federal's interest. *See Higgins v. General Motors Corp.*, 250 Ark. 551, 465 S.W.2d 898 (1971); *Cochran v. Arkansas Dep't of Human Servs.*, 43 Ark. App. 116, 860 S.W.2d 748 (1993).

is a question of fact for the jury to determine. *See generally Henry v. Gaines-Derden Enters., Inc.*, 314 Ark. 542, 863 S.W.2d 828 (1993); *Rowland v. Gastroenterology Assocs.*, 280 Ark. 278, 657 S.W.2d 536 (1983) (holding that whether an agent acts within the scope of his authority is a question of fact for the jury to determine). Holt relies on the generally established agency principles that 1) whether an employee is acting within the scope of employment depends on whether he is carrying out the object and purpose of the enterprise, as opposed to acting exclusively in his own interest; 2) if the servant steps aside from the master's business to do an independent act of his own and not connected with his master's business, then the relation of master and servant is for such time, however short, suspended; and 3) a master is ordinarily not liable for his servant's criminal acts.

While Holt correctly quotes the law as it relates to respondeat superior liability, the rules with regard to that type of liability do not completely answer the questions presented by this appeal. This is not a situation in which the Bank seeks to hold Holt vicariously liable for the tort of its employee; it seeks to hold Holt liable on its own endorsement contract, which arises by virtue of its signature being affixed to the check by its agent.

■ ■ The Uniform Commercial Code provides that, if a person acting, or purporting to act, as a representative signs an instrument by signing the name of the represented person, the represented person is bound by the signature to the same extent he would be bound if the signature were on a simple contract. Ark. Code Ann. § 4-3-402(a) (Repl. 2001). If the represented person is bound, the signature of the representative is the "authorized signature of the represented person" and the represented person is liable on the instrument. *Id.* There is no question in this case that Van Curen had the actual authority to endorse Holt's name on checks. Therefore, when Van Curen endorsed Holt's name, Holt's authorized signature was contained thereon, and Holt incurred the obligation of an endorser under the UCC provisions mentioned earlier in this opinion.

■ Because Van Curen was authorized to endorse Holt's name, Holt is liable as an endorser, regardless of any action that Van Curen took in misappropriating the funds after the endorsement was made. *See Citizen's Bank of Maryland v. Maryland Indus. Finishing Co.*, 338 Md. 448, 659 A.2d 313 (1995); *Rohrbacher v. Bancohio Nat'l Bank*, 171 A.D.2d 533, 567 N.Y.S.2d 431 (1991); *Jones v. Van Norman*, 513 Pa. 572, 522 A.2d 503 (1987) (recognizing that misappropriation by an agent after an authorized endorsement does not affect the validity of the endorsement, and the endorsement is either valid or invalid at the time it is made); *see also* 6 Ronald A. Anderson, *Uniform Commercial Code* § 3-403:57 at 346 (1998); 4 William Hawkland and Larry Lawrence, *Uniform Commercial Code Series* § 3-403:1 at 3-566 (West 1999).

Whether Van Curen, in making the endorsement, had a plan in mind to convert the funds is not relevant to Holt's liability on its signature. The fact is, Holt authorized Van Curen to endorse its name on the check and, having done so, became liable as an endorser under the UCC.

■ As for the summary judgment entered on Holt's counterclaim against First Federal, Holt argues that, even if it were liable to First Federal under the UCC, "it does not necessarily follow that the bank was not negligent or that it did not convert [Holt's] property." Holt cites no case nor makes any convincing argument to support its contention that a bank that pays on an authorized endorsement may nevertheless be liable for conversion or negligence. The question is not a simple one, requiring exploration and application of provisions of the UCC regarding conversion, the laws of banking, and possibly the commercial reasonableness of First Federal's conduct. It is not apparent without further research that Holt's point is well-taken. We therefore decline to address a legal issue that is not sufficiently developed on appeal. *See In re Adoption of D.L.J.*, 341 Ark. 327, 16 S.W.3d 263 (2000).

Affirmed.

NEAL and ROAF, JJ., agree.