UNITED STATES FIDELITY & GUARANTY COMPANY, Crane Construction Company, and Pay and Sons Masonry Contractors, Inc. *v.* CONTINENTAL CASUALTY COMPANY

03-39                                             120 S.W.3d 556

Supreme Court of Arkansas
Opinion delivered June 26, 2003

[Petition for rehearing denied September 4, 2003.]

*Hardin and Grace, P.A.*, by: *David A. Grace*; and *Faegre & Benson, LLP*, by: *Patrick J. O'Connor, Jr., James J. Hartnett, IV*, and *Michael B. Lapicola*, for appellants United States Fidelity & Guar. Co.

*William F. Smith*, for appellant Ray & Sons.

*Kilpatrick, Williams, & Meeks, L.P.*, by: *Gene Williams*, for appellee.

R AY THORNTON, Justice. Appellant, Crane Construction [Crane], a general contractor, was hired by Wal-Mart to construct retail stores in several states. Appellant, United States Fidelity & Guaranty Company [USF&G], issued several performance and payment bonds to Crane in connection with the projects.[1]

In September of 1992 and July of 1993, Crane entered into contracts with appellant, Ray & Sons Masonry [Ray], a subcontractor, to perform masonry work on several of the Wal-Mart stores. The contracts entered into by Crane and Ray contained an indemnification clause in which Ray agreed to:

---

[1] We note that we have considered other aspects of this case in previous appeals. *See United States Fidelity & Guaranty Co. v. A&A Masonry*, 337 Ark. 366, 991 S.W.2d 111 (1999); *Ray & Sons Masonry Contractors v. United States Fidelity & Guaranty Co.*, 353 Ark. 201, 114 S.W.3d 189 (2003).

protect, indemnify and hold Crane free and harmless from and against any and all claims, demands and causes of action of every kind and character (including the amounts of judgments, penalties, interest, court costs and legal fees incurred by Crane in defense of same arising in favor of governmental agencies or third parties (including employees of either party)) on account of taxes, claims, fines, debts, personal injuries, death or damages to property, and without limitation by enumeration all other claims or demands of every character occurring or in anywise incident to, in connection with or rising out of the work to be performed by subcontractor.

Appellee, Continental Casualty Company, [Continental] provided Ray insurance for the project pursuant to a general liability policy. In September of 1993, Crane sued Wal-Mart in federal court. In its complaint, Crane alleged breach of contract, fraud, and racketeering. In November of 1993, Wal-Mart counterclaimed, asserting breach of contract and negligence resulting from allegedly faulty and defective construction on various Wal-Mart projects completed by Crane. Ray had performed work on two of the allegedly faulty and defective Wal-Mart projects. In 1993, Wal-Mart also filed a suit against USF&G in federal court, alleging that it had breached its performance bond obligation for the projects.

In August of 1996, USF&G, Crane, and Wal-Mart entered into a settlement agreement that ended the federal litigation. In the settlement, USF&G made payments to Wal-Mart in exchange for the dismissal of Wal-Mart's claims against USF&G and Crane.

Thereafter, Crane and USF&G filed a complaint in Pulaski County Circuit Court against Ray and several of the other subcontractors who worked on the Wal-Mart projects, alleging breach of the indemnity agreement. Specifically, Crane and USF&G alleged that "the subcontractors . . . breached their subcontract agreements with Crane . . . in not indemnifying and holding Crane harmless from the various costs, expenses, and attorneys' fees incurred in the defense of the Wal-Mart claims in the [federal suit], and not providing a defense to Crane in regard to the alleged defective, nonconforming work, and in denying their obligation to indemnify and hold Crane harmless for all

claims, demands, and causes of action relating to the subcontractors' work on the projects and in failing to reimburse Crane and plaintiffs for costs incurred in settlement of Wal-Mart's claims relating to the subcontractors' defective and nonconforming work on the projects." The complaint also alleged causes of action for breach of contract and negligence.

In 2001, a trial was held on the complaint. The case was submitted to the jury with respect to Ray solely on the issue of whether there was a breach of contractual indemnity. The jury found that Ray was liable to USF&G and Crane for failing to indemnify Crane and USF&G against Wal-Mart's claims. The jury awarded USF&G and Crane $1.5 million in damages.

In August of 2001, Continental Casualty Company, who had defended Ray under a reservation of rights, filed a declaratory judgment action in the Pulaski County Circuit Court seeking to have the circuit court determine whether its policy issued to Ray provided coverage for payment of the judgment awarded in favor of Crane and USF&G.[2]

In March of 2002, Continental filed a motion seeking summary judgment. In its motion, Continental argued that "the general liability policy issued by Continental Casualty Company to Ray and Sons Masonry Contractors, Inc., and in effect at the time of the events leading to the judgment in *USF&G v. Ray and Sons Masonry, supra*, does not provide coverage for the judgment."

In April of 2002, USF&G and Crane filed a motion seeking partial summary judgment. In their motion, USF&G and Crane argued that they were entitled to summary judgment because Ray's defective work caused Wal-Mart to suffer property damage. They further argued that this type of property damage was covered in Continental's policy.

In September of 2002, a hearing was held on the parties' motions. After hearing arguments from the parties, the trial court granted Continental's motion for summary judgment. It is from

---

[2] The complaint seeking declaratory judgment was amended, but not materially changed in February of 2002.

this order that appellants appeal. We reverse the trial court's order and remand this matter to the circuit court for resolution of unresolved factual issues.

■ ■ Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Spears v. City of Fordyce*, 351 Ark. 305, 92 S.W.3d 38 (2002). Once the moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

In their first point on appeal, appellants argue that the trial court erred in granting appellee's motion for summary judgment.[3] In granting appellee's motion, the trial court found "there was no duty on the part of Continental Casualty Company under its comprehensive general liability insurance policies to indemnify Ray and Sons Masonry Contractors and others for a judgment entered on the 26th day of October 2001, in the matter of *United States Fidelity & Guaranty Company and Crane Constriction Company v. Ray and Sons Masonry Contractors*." Appellants contend that the trial court's finding was erroneous because "there is coverage under the policy for at least a portion of Crane's and USF & G's judgment against Ray & Sons in the underlying action." Appellee argues that the trial court properly granted its motion for summary judgment because the judgment entered against Ray in the underlying suit was for breach of an indemnity agreement, a matter that is not covered by the policy.

■ To determine whether summary judgment was properly entered, we must ascertain whether the policy issued to Ray by

---

[3] We note that appellants also argue that the trial court erred when it denied their motion for partial summary judgment. We do not review the denial of summary judgment motions. *Daniels v. Colonial Ins. Co.*, 314 Ark. 49, 857 S.W.2d 162 (1993).

Continental provided coverage for the judgment entered against Ray in the underlying suit. Before evaluating the language of the policy issued by Continental to Ray, it is important to review our rules governing the interpretation of insurance contracts. We outlined these rules in *Smith v. Prudential Property & Casualty. Ins.*, 340 Ark. 335, 10 S.W.3d 846 (2000), where we wrote:

> An insurance policy is to be construed strictly against the insurer, who chooses its language. The construction and legal effect of written contracts are matters to be determined by the court, not by the jury, except when the meaning of the language depends upon disputed extrinsic evidence.
>
> This court has also held that it is a principle of insurance law established in our state that provisions contained in a policy of insurance must be construed most strongly against the insurance company which prepared it, and if a reasonable construction may be given to the contract which would justify recovery, it would be the duty of the court to do so. *Drummond Citizens Ins. v. Sergeant*, 266 Ark. 611, 588 S.W.2d 419 (1979). It is also a cardinal rule of insurance law that a policy of insurance is to be construed liberally in favor of the insured and strictly against the insurer or, as more fully stated, if the language employed is ambiguous, or there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted. *Id.; see also Nationwide Mut. Ins. Co. v. Worthey*, 314 Ark. 185, 861 S.W.2d 307 (1993).

*Smith, supra.*

Cognizant of the foregoing principles, we turn to the relevant policy language in the case *sub judice*. The policy provides:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damages which this insurance applies.
>
> \* \* \*
>
> b. This insurance applies to bodily injury and property damage only if:
>
> (1) The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; and

(2) the bodily injury or property damage occurs during the policy period.

Having reviewed the relevant policy language, we turn to the facts in the case now before us. In this case, judgment was entered against Ray in an underlying action between Ray and Crane. The nature of that judgment was breach of a contractual indemnification agreement by Ray's failure to indemnify Crane in its suit with Wal-Mart. The policy issued by Continental to Ray provides coverage for "damages" that Ray was "legally obligated to pay" based on "occurrences" of "bodily injury" or "property damage." Because the nature of Ray's liability in the underlying action was based on an indemnification agreement, and because the policy issued by Continental did not provide coverage for a breach of contract, Continental contends that summary judgment was properly entered in its favor. However, the coverage issue is not resolved by limiting our analysis to these policy provisions. Specifically, appellants argue that Continental's policy expressly provides coverage for damages imposed based on an indemnity action. The language identified by appellants as providing such coverage is as follows:

2. Exclusions

This insurance does not apply to:

b. Bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract agreement. *This exclusion does not apply to liability for damages*:

(1) *assumed in a contract or agreement that is an 'insured contract,'* provided the bodily injury or property damage occurs subsequent to the execution of the contract or agreement.

\* \* \*

6. Insured contract means:

f. That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for bodily injury or property damage to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Based on this language, appellants argue that the indemnification provisions of the subcontracts were "insured contracts," which Continental agreed to cover. We agree with appellants' contention.

■ ■ According to Douglas Richmond and Darren Black, in their article *Expanding Liability Coverage: Insured Contracts and Additional Insureds*, 44 Drake L. Rev. 781 (1996), "insured contracts" have two elements. First, "the contract or agreement must expressly provide for the insured's assumption of the other party's liability. "Second, the insured must assume the tort liability of another." *Id.* After reviewing the language in the indemnification provisions of the subcontracts, we conclude that they were "insured contracts." We conclude that by signing the indemnification provisions of the subcontracts, Ray agreed to assume the relevant tort liability of Crane.

■ Having concluded that Ray entered into an insured contract with Crane, we must next determine whether the liability Crane incurred as a result of its suit with Wal-Mart is covered by Continental's policy. To make this determination we must look to the basis of Wal-Mart's claims against Crane. Wal-Mart sought to recover from Crane based on allegations of negligence *and* breach of contract. These claims were dismissed after a settlement was entered into by the parties. We do not know the basis of the settlement. Continental's policy provides coverage for "insured contract" "under which you assume the *tort liability* of another party. . . ." This policy language does not cover indemnification for contractual breaches. Because we do not know whether Crane settled with Wal-Mart based on tort claims or contract claims, we also do not know whether the "insured-contract exception" applies. Without resolving the issue of whether the exception applies, it is impossible to ascertain the extent of Ray's coverage under Continental's policy. Based on this unresolved factual question, we reverse the trial court and remand the case for further development of the issue.

■ Before leaving this issue, we note that appellee argues that the outcome of this case is "controlled" by *Unigard Security Ins. Co. v. Murphy Oil*, 331 Ark. 211, 962 S.W.2d 735 (1998). In *Unigard*, we held that an insurance policy did not provide coverage

for a judgment entered against an insured when the nature of the insured's liability arose from a contractual breach of a lease agreement. This holding is not dispositive on the issue raised in the present case. The primary distinction in the two cases is the nature of the liability incurred by the insured. In *Unigard*, a judgment was entered against the insured for breaching a lease agreement. The insurance policy at issue in that case did not provide or anticipate coverage for breaching lease agreements. For that reason, requiring *Unigard* to satisfy a judgment resulting from such a breach would be outside the policy's coverage. These facts should be contrasted with the facts in the case now on review. In the present case, the judgment entered against Ray was for breaching an indemnification agreement. This agreement was an "insured contract" and Continental's policy provided coverage for damages which resulted from insured contracts. Accordingly, requiring Continental to satisfy a judgment stemming from breaching such an agreement is expressly within the policy coverage. We conclude that the facts and policies at issue in *Unigard* are distinguishable from the case *sub judice*.

Appellants also contend that we should reverse the trial court and find as a matter of law that "there is coverage under the policy for at least a portion of Crane's and USF&G's judgment against Ray & Sons in the underlying action." Appellants' argument is based upon policy language which provides coverage for "an occurrence" that leads to "property damage." The policy provides:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damages which this insurance applies.

> \* \* \*

> b. This insurance applies to bodily injury and property damage only if:

> (1) The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; and

> (2) the bodily injury or property damage occurs during the policy period.

> \* \* \*

9. *Occurrence* means an *accident*, including continuous and repeated exposures to substantially the same general harmful conditions.

\* \* \*

12. *Property damages* means:

a. *Physical injury to tangible property*, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. *Loss of use of tangible property that is not physically injured.* All such loss shall be deemed to occur at the time of the occurrence that caused it.

■■ As the appellants correctly note, "to establish coverage under Continental's Policy, USF&G and Crane are required to establish that the damages for which Ray & Sons is liable: (1) were due to an occurrence that (2) resulted in property damage." First, we must consider whether there was an occurrence. Appellants argue that the "occurrence" that gave rise to the property damage was Ray's defective workmanship on the Wal-Mart projects. The policy defines an "occurrence" as "an accident." We have defined an "accident" as "an event that takes place without one's foresight or expectation—an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected." *Continental Ins. Co. v. Hodges*, 259 Ark. 541, 534 S.W.2d 764 (1976) (citing 44 AM. JUR. 2d *Insurance* § 1219 (1969)). Because the policy has defined "occurrence," and because we have defined "accident," we conclude that the remaining fact question that must be resolved in this case before coverage can be determined is whether Ray's workmanship on the Wal-Mart projects constituted an "accident."[4] Accordingly, we conclude that upon remand this issue must be resolved.

---

[4] As the parties note, there is a split in the jurisdictions over whether defective workmanship is an accident and therefore an "occurrence" which is covered under the terms of an insurance policy. *See Heile v. Hierrmann*, 136 Ohio App. 3d 351, 736 N.E.2d 566 (1999); *Pursell Construction, Inc. v. Hawkeye-Security Ins. Co.*, 596 N.W.2d 67 (1999); *Standard Fire Ins. Co. v. Chester-O'Donley & Associates, Inc.*, 972 S.W.2d 1 (1998), *R.N. Thompson & Associates, Inc., v. Monore Guaranty Ins. Co.*, 686 N.E.2d 160 (1997); *United States Fidelity & Guaranty Corp. v. Advance Roofing & Supply Co., Inc.*, 163 Ariz. 476, 788 P.2d 1227 (Ct. App. 1989) (all holding that faulty or defective workmanship is not an accident and therefore not an "occurrence" under the terms of an insurance policy). *But*

Having concluded that this case must be reversed and remanded, we decline to address the remaining alternative points raised by appellants USF&G and Crane. However, we will consider a separate point raised by appellant Ray in which it is argued that summary judgment was not proper because there are outstanding factual questions regarding representations made by Continental's agent to Ray concerning policy coverage. In its response to Continental's motion for summary judgment, Ray asserted:

> There is a genuine issue of fact as to whether defendant Ray and Sons Masonry Contractors, Inc. got the coverage that they thought they had purchased. Defendant is of the opinion they purchased such coverage. Continental is still defending and appealing on behalf of Ray and Sons Masonry Contractors, Inc.

This assertion was not supported by accompanying affidavits or other evidence. Rule 56 of the Arkansas Rules of Civil Procedure provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*Id.*

With regard to Ray's contention that summary judgment was also not proper because there were unresolved fact questions regarding representations made by Continental's agents, we note that Continental submitted a motion for summary judgment that was supported by a brief and numerous exhibits. In order to raise a fact question on this point, Ray was required by Rule 56 to offer more than mere allegations of factual disputes. Ray failed to properly refute Continental's motion for summary judgment on

*see Fidelity & Deposit Co. of Maryland v. Hartford casualty Ins.* Co., 189 F.Supp. 2d 1212 (D. Kan. 2002); *Colard v. American Family Mutual Ins. Co.*, 709 P.2d 11 (Colo. App. 1985) *United States Fidelity & Guaranty Co. v. Bonitz Insulation Co. Of Alabama*, 424 So.2d 569 (1982) (all holding that faulty or defective workmanship is an accident and therefore an "occurrence" under the terms of an insurance policy).

this point and for that reason we do not reverse the trial court on this issue. However, as previously discussed, the grant of summary judgment must be reversed on the basis of questions of fact that remain outstanding on the issues of whether coverage was triggered by the "insured contract exception" or the possibility of an "occurrence" of property damage.

Affirmed in part; reversed and remanded in part.

CORBIN, J., not participating.