AMERICAN AUTOMOBILE AUCTION, INC. *v.* Ralph
TITSWORTH and Joe McPEEK

87-14                                           730 S.W.2d 499

Supreme Court of Arkansas
Opinion delivered June 15, 1987

*Tatum & Sullivan, P.A.*, by: *Tom Tatum*, for appellant.

*Laws, Swain & Murdock, P.A.*, by: *Timothy W. Murdock*, for appellee.

ROBERT H. DUDLEY, Justice. The appellees, Ralph Titsworth and Joe McPeek, filed a tort suit under a negligent supervision theory, seeking to hold the employer, appellant American Automobile Auction, Inc., liable for the intentional acts of its employees. The jury returned verdicts of $50,000.00 for appellee Titsworth and $1,000.00 for McPeek. We affirm the judgment on the verdicts.

The appellant's first point of appeal is that there is no proof of negligence because, it argues, the employees committed intentional torts against the appellees. The proof was undisputed that the employees committed intentional torts, but such proof does not exclude the theory of negligent supervision of the employees who committed the intentional torts. The appellees' theory of the case was not based upon imputed liability, and they did not seek an instruction on vicarious liability for the intentional torts, but rather, they sought recovery on the theory of direct liability for the negligent failure to supervise employees.

In determining the sufficiency of the evidence an appellate court reviews the evidence, and all reasonable infer-

ences from it, in the light most favorable to appellee. *Taylor* v. *Terry,* 279 Ark. 97, 649 S.W.2d 392 (1983). In so reviewing the evidence we find that the appellant corporation conducted automobile auctions. It hired David Doster and Don Ball, both ex-convicts. Doster was hired as a sales director and repossessor of vehicles while Ball was hired as an auction ring man and bouncer. At the time of the intentional torts, an auction was being conducted, and employee Ball, who normally drank while at work, had a bottle of beer in his hand.

The president of the appellant corporation, Don Moak, had barred appellee McPeek from attending a different automobile auction which he owned because Moak had previously had trouble collecting a debt from McPeek and his partner. In fact, Moak and employee Doster had repossessed a truck from McPeek's partner. Even so, appellant corporation mailed a written invitation to McPeek to attend the auction.

On the night of the auction, McPeek went to Moak's office and asked if he was invited to or barred from the auction. Moak asked him to leave and come back some other time and discuss it. Moak then watched appellee McPeek go into the auction. McPeek caused a disturbance. The appellant's employees, Doster and Ball, commenced to forcibly eject appellee McPeek. Appellee Titsworth, a large man, attempted, without fighting, to protect McPeek and, at the same time, get him out of the auction area. Employee Doster told appellee Titsworth: "Turn him loose, we're going to teach him a lesson. This is the reason I pay this boy [Ball] $100.00 a week is to take care of punks like him." Employees Doster and Ball then viciously attacked appellee McPeek in the auction area. McPeek drew a knife and started to fight back. Appellee Titsworth pleaded with them to stop before someone was killed. Appellee Titsworth then got appellee McPeek away from the auction and led him across the street to Titsworth's truck. The employees, Doster and Ball, got a shovel and a bumper jack, went across the street to appellee Titsworth's truck, and severely beat both appellees.

The beatings were so tumultuously administered that a crowd of 50 people gathered before it ended. Even so, the president of the appellant corporation remained in his office.

These facts and the reasonable inferences therefrom estab-

lish that appellant corporation hired Ball, an ex-convict, for the purpose of forcefully ejecting people from the auction and teaching "punks" "a lesson." Ball was paid $100.00 per week but only worked one day a week. Ball normally drank at work and had a bottle of beer in his hand when the intentional torts occurred. Doster, another ex-convict, knew that appellee McPeek and his partner owed the appellant's president, Moak, a debt and he had repossessed a truck from the partner. On the night at issue, Don Moak told appellee to leave the premises, but saw him walk into the auction area. At this point, the president of appellant corporation knew, or by the exercise of reasonable diligence should have known, that appellee McPeek might be forcibly ejected by the corporation's employees, Doster and Ball. Still he did not exercise any supervisory care on behalf of the appellant corporation.

Clearly, an employer who hires two ex-convicts, one of whom is normally drinking, and entrusts to them the job of forcibly ejecting patrons, has a duty to exercise reasonable care to avoid harm to those patrons by exercising supervisory care when the employer knows, or by the exercising of reasonable diligence ought to know, that such employees are about to forcibly eject a patron.

Appellant next argues that the evidence is insufficient to support the amount of the awards. The argument is without merit. McPeek, who received the $1,000.00 verdict, suffered a permanent scar, plus pain, suffering, and anguish. Titsworth, who received the $50,000.00 verdict, had medical expenses in excess of $3,700.00, is still under medical care, has suffered loss of income, has suffered pain, and according to his medical witness, will continue to do so.

Affirmed.

HOLT, C.J., not participating.