ST. PAUL FIRE & MARINE INS. CO., and
Comprehensive Care Corp. *v.* Marie KNIGHT, as Parent
and Natural Guardian of Keith Knight, a Minor

88-122                                    764 S.W.2d 601

Supreme Court of Arkansas
Opinion delivered February 6, 1989

*Friday, Eldredge & Clark*, by: *Laura A. Hensley*, for
appellant St. Paul Fire and Marine Insurance Co.

*Atchley, Russell, Waldrop & Hlavinka*, by: *Victor
Hlavinka; Greines, Martin, Stein & Richland*, by: *Alan G.
Martin and Paul M. DeMarco*, for appellant Comprehensive
Care Corp.

*Lovell, Arnold & Nalley*, for appellee.

JOHN I. PURTLE, Justice. This is an appeal from a verdict and
judgment in the Saline County Circuit Court against the appel-
lants and Roger Sample on a claim for negligently retaining an
employee who allegedly was disposed to molest adolescent males
by force or threat. The defendant, Roger Sample, did not appear
at the trial and defend the action nor does he appeal from the
judgments for compensatory damages entered jointly and sever-
ally against all three defendants in the sum of $400,000, nor from
the judgments against Sample only for $250,000 each to the
appellees for punitive damages. For their appeal the appellants
argue that there is no substantial evidence to support the verdict

and that the verdict against them is excessive. We agree that the appellees failed to present substantial evidence to meet their burden of proof as set out in instructions 8 and 9 given to the jury. Therefore, the judgment against the appellants is reversed and dismissed.

The complaint against St. Paul Fire and Marine Insurance Company (insurance carrier for the Arkansas Children's Hospital), Comprehensive Care Corporation and Roger Sample, alleged a joint venture between Arkansas Children's Hospital and Comprehensive Care Corporation in the project known as the Adolescent Stress Center. A direct action was allowed against St. Paul because ACH is a charitable institution. The complaint alleged that Sample committed two separate sexual assaults on Keith Knight while acting within the scope of his employment and that the appellants were negligent in hiring, supervising, and retaining Mr. Sample as an employee and in failing to warn the appellees of Sample's dangerous propensities. The only theory that went to the jury was that ACH was negligent in not terminating Sample and that Comprehensive Care was negligent in failing to take steps to secure his termination.

At the heart of the issues to be decided on this appeal are instructions number 8 and 9. Number 8 (not based on any model instruction) instructed the jury that the appellants could only be found liable for negligently retaining Robert Sample as an employee if they found: that pursuant to his employment Roger Sample had a right to be where he was when the wrongful act allegedly occurred; that the meeting between Keith Knight and Sample was a direct result of the employment; and that the appellants would have received some benefit from the meeting between Sample and Knight had the wrongful act not occurred.

Instruction number 9 (roughly based on AMI 203) included some overlapping of instruction number 8 among its five essential propositions. The first and second elements required a finding that Sample was disposed to molest adolescent males by force or threat and that the appellant knew or should have known of his disposition to do so. The third element of instruction number 9 required a finding that ACH was negligent in not terminating Roger Sample and that Comprehensive Care was negligent in failing to take steps to secure the termination. The fifth element

was a charge that required a decision that the harm to Keith Knight was proximately caused by the negligence of the appellants. The instruction had the usual concluding paragraph requiring that each of these five propositions must be proven before a verdict could be returned in favor of the appellee. No objection was made to these instructions.

At the time Keith Knight was admitted to the Stress Center in June, 1986, Roger Sample was employed as a psychiatric technician by ACH and was assigned to the Stress Center. Upon the admission of Keith, Roger Sample was assigned as his co-case worker. Sample worked the 3:00 p.m. until 11:00 p.m. shift at the center. Basically, Sample served as a supervisor and tutor for Knight while he was in the Stress Center. Although the schools where the students were enrolled continued to make assignments, the Stress Center followed through to see that those assigned to the center kept up with their regular school studies. Occasionally the case workers and other personnel from the Stress Center went with the residents of the Stress Center to the Arkansas Arts Center, to movies, and sometimes to a bowling alley.

During the time Knight and Sample were associated at the center they did a considerable amount of wrestling. According to Knight they usually wrestled every day. Most of the other boys wrestled with Sample or other case workers. The only complaint Knight ever made was that Sample was getting a little rough in the wrestling. It was admitted that during the wrestling Sample sometimes placed his hand or arm on the genitals of the young boys and sometimes slapped them on the buttocks. Keith Knight stated he did not feel that he was being sexually molested by Sample, even though they were sometimes in Knight's room together at night.

The young man was at the institution for about five and a half weeks. He was discharged because he would not follow the program. In his words, "I would not cooperate." He stated he supposed he was just hardheaded at the time, and that "[b]y the time I had completed my stay, I thought Roger was one of my real friends." Sometime after Knight had been discharged from the center, it was revealed that some persons had observed what they thought to be improper conduct by Sample, such as placing his hands on the genitals of the boys when they wrestled, or patting

them on the buttocks. Some also stated that he sometimes sang dirty songs and on at least one occasion remarked that Keith had a "big one."

At the time Knight was discharged and he and his mother started to the door of the Children's Hospital, Sample approached and talked to them. No other employee of ACH, Comprehensive Care or the Stress Center was present at that time. Sample walked them to the door and commenced explaining the "big brother program" to Keith and his mother. The net result was that Sample gave Knight his home telephone number on a card and said, "Call me when you get home." (He specifically requested the call be made after work.) Sample called the young man that night at home to see how he was getting along. He told Keith Knight that he was going on a two week vacation but, that when he returned, he would call him and they would go on an outing. It was the young man's understanding that the "big brother" care Sample was offering him was a part of the "after care program" at the Stress Center. However, Keith stated that he understood that one could not attend this program unless he had completed the institutionalized program at the Stress Center, and that he had not completed the program.

On July 22, after Sample returned from his vacation, he arranged to take Keith shopping and to go to Wild River Country, a water theme amusement park. Admittedly Keith was anxious to go because he trusted Sample and thought he was one of his best friends. They first went to a store where Sample offered to buy Knight a bathing suit, but Knight refused. Sample then bought one for himself and invited Knight into the dressing booth to watch him try it on. The invitation was declined. After the visit to the store they returned to Sample's home, where he pulled a gun on Knight and forced him to undress. Sample then performed oral sex on the adolescent. They subsequently went to Wild River Country and, after a fairly short visit, returned to Sample's home where a similar incident occurred. Knight, sometime later, stated that Sample had threatened to kill his mother and brothers if he ever told what Sample had done.

After the incident was reported to SCAN, the young man was placed in Rivendale, a residential psychiatric treatment center, because he was a threat to his mother and to his brothers.

He had become violent, beating his brother and his mother and punching holes in the wall. He said he did this because he was frustrated. He thought that he might be a homosexual because of what Sample had done to him. At any rate, his life was generally miserable, as was that of his mother and brothers, and he was forced to obtain further treatment at Rivendale. He was progressing well at the time of the trial and was hopeful that he was on his way to a complete recovery from the trauma of the incident.

The fact that Keith Knight and his mother thought he was in the "after care" program at the Stress Center is the basis upon which the suit was filed. However, he was not actually enrolled in the program. Keith himself stated: "I knew that the after care program was for those who graduated. I did not know I did not qualify for it. I knew I had to graduate to be in." There is no evidence that the Stress Center, ACH or CCC had any knowledge or reason to know that the young man believed he was enrolled in their after care program at the time of the assault.

The appellants presented testimony to the effect that it was against the policy of the institutions and the program to allow contact with patients after the patient had been discharged. Testimony reveals that the institutions had no prior knowledge of the subsequent contact in this case.

The appellants make several arguments for reversal, but for the purposes of this opinion we treat only the matters of the sufficiency of the evidence and instructions 8 and 9. The complaint alleged that Sample had committed the assault on Knight while acting within the scope of his employment, and that the appellants had been negligent in hiring, supervising and retaining Sample as an employee and by failing to warn the appellees of Sample's dangerous propensities. The instructions given to the jury presented only the issue of negligent failure to terminate.

Instruction number 8, given without objection, reads as follows:

> You are advised that Arkansas Children's Hospital and Comprehensive Care Corporation can only be found liable for negligently retaining Roger Sample as an employee if you find the following to be true.

> First, that pursuant to his employment, Roger Sample had

a right to be where he was when the wrongful act allegedly occurred;

Second, that the meeting between Keith Knight and Roger Sample, at which time the wrongful act allegedly occurred, was a direct result of the employment; and

Third, that Arkansas Children's Hospital and Comprehensive Care Corporation would have received some benefit from the meeting between Roger Sample and Keith Knight had the wrongful act not occurred.

Instruction number 9, also given without objection, reads as follows:

Marie Knight, individually and as parent of Keith Knight, a minor, claims damages from St. Paul Fire and Marine Insurance Company and Comprehensive Care Corporation, and has the burden of proving each of five essential propositions.

First, that Roger Sample was disposed to molest adolescent males by force or threat;

Second, that Arkansas Children's Hospital and Comprehensive Care Corporation knew or should have known of Roger Sample's disposition to do so;

Third, that Arkansas Children's Hospital was negligent in not terminating Roger Sample and that Comprehensive Care Corporation was negligent in failing to take steps to secure the termination of Roger Sample as an employee of Arkansas Children's Hospital before Keith Knight was discharged;

Fourth, that Roger Sample caused harm to Keith Knight;

And Fifth, that the harm to Keith Knight was proximately caused by the negligence of Arkansas Children's Hospital and/or Comprehensive Care Corporation.

If you find from the evidence in this case that each of these propositions has been proved, then your verdict should be for the plaintiffs against the party or parties found to be negligent; but if on the other hand, you find from the

evidence that any of these propositions has not been proved, then your verdict should be for the defendants.

The appellees' case is premised upon the theory that Sample had a propensity to molest adolescent males and that the appellants knew or should have known that the employee was a danger to adolescents enrolled in the Stress Center. We do not find evidence in the record which would put the appellants on notice that the act which occurred was foreseeable.

We have not previously considered the negligent retention of an employee theory of liability. We therefore look to the treatment of this question in other jurisdictions.

In *Abernathy* v. *United States*, 773 F.2d 184 (8th Cir. 1985), the court held that actual threats of violence by a person with a history of violence were not sufficient in and of themselves to impose liability on an employer for future violence. The history of a person having committed crimes against property does not make a rape foreseeable. *Kane* v. *Hartford Accident and Indemnity Company*, 159 Cal. Rptr. 446 (1979). Physical aggression and obnoxious behavior by an employee does not require the employer to discern a propensity for violence. *Dempsey* v. *Walso Bureau, Inc.*, 246 A.2d 418 (Penn. 1968). Even if every statement of fact by the appellees were conceded, there would still be no rational basis for requiring employers to foresee the threat of violence which occurred in this case. Employers cannot be required to possess clairvoyant powers to discern whether an employee should be retained.

Instruction number 8 advised the jury that before it could find the appellants liable for negligently retaining Sample as an employee it must find that Sample had a right, arising from his employment, to be where he was at the time the wrongful act occurred. Nothing in the record indicates that Sample's employment required him to have this young man in his home. The second requirement of this instruction was that the meeting must have been a direct result of the employment. An example of an incident arising as the result of employment can be found in *Boykin* v. *District of Columbia*, 484 A.2d 560 (D.C. App. 1984), where a teacher assaulted a student during a private conference required by the school curriculum. The meeting in the present case was the result of the employment only in the minds of the

appellee and his mother. Not only was Sample not authorized to meet with Knight at his home, he was specifically prohibited from doing so by his employment by ACH. Although the appellees may not have been aware of this, it was nevertheless a condition of his employment. The third required element was that the appellants would have received some benefit from the meeting between Sample and Knight. Obviously, no benefit resulted to the employer, and none would have resulted had the violent act not occurred.

The ninth instruction primarily charged the jury that, in order to find the appellants liable for negligently failing to terminate Sample or failing to take steps to secure his termination, they must find that Roger Sample was disposed to molest adolescent males and that the employer should have known of this propensity. The appellees argue that the hospital's background check on Sample was very inadequate and that a proper investigation would have shown that he was not qualified for the position of psychiatric technician. There is no evidence that the hospital gained any information which would have led them to conclude that this employee might be predisposed to commit violent acts against anyone. See *Williams* v. *Feather Sound, Inc.*, 386 So. 2d 1238 (Fla. App. 1980). The investigation conducted by the hospital revealed that Sample had received apprentice counselor's credentials in the area of substance abuse from a community college in Michigan, that he had supervised a staff at the Pontiac Recreation Summer Playground Program, and that he also had received an honorable discharge from the Air Force. The investigation further revealed that, after he moved to Arkansas, he had completed a 500 hour work-study program at the McClellan Memorial Veterans Hospital and was enrolled as a student at the University of Arkansas at Little Rock when he applied for the position with ACH. He had no criminal record and no history of violent acts or sexual misconduct. It would take a vivid imagination to glean from this evidence any predisposition of appellant to molest adolescent males or commit sexual assault. See *Strauss* v. *Hotel Continental Co., Inc.*, 610 S.W.2d 109 (Mo. App. 1980).

After the occurrence of the criminal episode upon which this action is founded, the hospital learned that Sample had been discharged from Rivendale for "physical violence." The investi-

gation revealed that as part of his duties he was attempting to put restraints on a teenager when the youth bit him. His violent act consisted of slapping the patient for biting him, in violation of Rivendale's policy prohibiting the use of physical force on patients.

We have diligently searched the record and do not discern substantial evidence to support the verdict against the Arkansas Children's Hospital and Comprehensive Care Corporation. The case is reversed and dismissed.

Reversed and dismissed.

HICKMAN, J., concurs.

GLAZE, J., dissents.