Keith JACKSON *v.* George S. IVORY, Jr., Chantel Denise Mullen and Ivory Law Firm

02-1022 120 S.W.3d 587

Supreme Court of Arkansas
Opinion delivered June 26, 2003

[Petition for rehearing denied September 4, 2003]

*Friday, Eldredge & Clark LLP*, by: *John Dewey Watson, John F. Peiserich*, and *Brandon J. Harrison*, for appellant.

*Barber, McCaskill, Jones & Hale, P.A.*, by: *Robert L. Henry, III* and *D. Keith Fortner*, for appellees.

JIM HANNAH, Justice. Appellant Keith Jackson appeals the summary judgment order of the Pulaski County Circuit Court, Second Division, which dismissed his claim of professional negligence against Chantel Mullen and his claims of *respondeat superior* and negligent supervision against George Ivory, Jr. ("Ivory"), and the Ivory Law Firm. On appeal, Jackson argues that: (1) Ark. Code Ann. § 16-22-310 (Supp. 1993) does not bar his claim of professional negligence against Mullen; (2) a material factual dispute remains as to whether Jackson was in privity with Mullen; (3) a material factual dispute remains as to whether this case presents an exception to the privity requirement of § 16-22-310; (4) Mullen is estopped from claiming that she owed no duty to Jackson; (5) Jack-

son's negligent supervision and *respondeat superior* claims against Ivory are not barred by Ark. Code Ann. § 16-22-310.

We agree that the trial court erred in granting summary judgment in finding that there was no material factual dispute as to whether Jackson was in privity with Mullen, and we reverse and remand as to that point. We also agree that the trial court erred in granting summary judgment in finding that there was no material factual dispute as to whether Mullen and Ivory had an employee-employer relationship at the time of Mullen's alleged negligence; therefore, we reverse and remand the trial court's finding that Jackson's *respondeat superior* claims against Ivory are barred by section 16-22-310. We affirm the trial court on all remaining points. This appeal was certified to us by the court of appeals pursuant to Ark. Sup. Ct. R. 1-2(a)(5), as it represents an issue regarding the practice of law.

*Facts*

In 1996, Jackson served as an uncompensated recruiter of athletes for Elbert Crawford, a sports agent. At that time, Crawford, a longtime friend of Jackson's, worked at Llama Sports Management. After Llama Sports Management closed in 1998, Crawford formed Ace Sports Management ("Ace"). At the request of Crawford, Jackson began providing funds for the operation of the sports management business in 1997.

Some time in early 1998, Crawford met with Jackson and Dr. Joe Hargrove to discuss the possibility of Hargrove and Jackson investing in Ace. Jackson, Crawford, Hargrove, Hargrove's office manager, and appellee attorney Chantel Mullen attended the meeting to discuss investment opportunities and options. Jackson's accountant and financial advisor, Judd Rothman, participated in the meeting via conference call.

After the meeting, Jackson agreed to supply Ace with additional working capital of $370,000. Jackson's total contributions, which included prior advances and the $370,000 in working capital, amounted to $512,000, excluding interest on the loans prior to the final loan of $370,000.

Jackson requested that Crawford and Ace make arrangements to secure his loans to Ace. Mullen drafted an agreement ("Agreement") and, on March 3, 1998, at the offices of Ace, she gave copies of the draft to Jackson and Crawford. The Agreement provided that Jackson was to "have a first lien against $500,000.00 of the agent fees due and owing to Ace Sports Management, LLC and/or Elbert Crawford from the 1998 NBA Player's Contract of Corliss Williamson." The Agreement also gave Jackson a 40% ownership interest in Ace.

Jackson discussed the Agreement with Rothman, and Rothman recommended that professional basketball player Derek Fisher's contract should also be included as a specific revenue source. Mullen inserted typewritten modifications to the Agreement which stated that the income derived from Derek Fisher's contract would also be used to satisfy Ace's debt to Jackson.

On March 11, 1998, Jackson and Crawford signed the Agreement. Mullen was not present when the parties signed the Agreement. A UCC-1 Financing Statement was never filed with the Secretary of State; thus, Jackson's lien was never perfected.

Subsequent to the execution of the Agreement, Crawford pledged the contracts of Williamson and Fisher to other lenders who obtained a priority position to Jackson because Jackson's lien had not been perfected. Crawford and Ace later went into bankruptcy, of which Jackson is a creditor.

After learning that his lien had not been perfected, Jackson filed a complaint against Ivory and Mullen. Jackson contended that Mullen, while acting as his attorney, had committed professional negligence, in that she failed to perfect Jackson's lien, failed to properly draft the Agreement, failed to inform Jackson of the consequences of not taking appropriate steps to perfect his lien, and failed to act as an ordinary and prudent attorney would in similar circumstances. The complaint also alleged that at the time Mullen worked on the Agreement between Jackson and Crawford, she was an associate in the office of appellee Ivory and, as such, Mullen's alleged negligent acts could be imputed to Ivory.

Mullen and Ivory filed a motion for summary judgment, which stated that Jackson's claim was "barred by the privity/lawyer-immunity statute. Ark. Code Ann. § 16-22-310." Both Mullen and Ivory denied that they ever served as Jackson's attorney. After a hearing on May 21, 2001, the trial court granted Mullen's and Ivory's motion for summary judgment.

In the order granting summary judgment, the trial court stated:

1. There is no genuine issue as to any material fact.
2. Plaintiff's claim against Chantel Mullen is barred by A.C.A. § 16-22-310.
3. Plaintiff's claim against George Ivory, Jr. is barred by A.C.A. § 16-22-310.
4. Chantel Mullen is entitled to Summary Judgment in her favor and her Motion for Summary Judgment is granted by the Court.
5. George S. Ivory, Jr. is entitled to Summary Judgment in his favor on Plaintiff's claims, including the allegation of negligent supervision, and his Motion for Summary Judgment is granted by the Court.
6. Summary Judgment is granted in favor of Ivory Law Firm.
7. A.C.A. § 16-22-310 is not unconstitutional as alleged by plaintiff.[1]

### Standard of Review

 Summary judgment should only be granted by the trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *See Vanderpool v. Pace*, 351 Ark. 630, 97 S.W.3d 404 (2003). The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. *City of Barling v. Fort Chaffee Redevelopment Authority*, 347 Ark. 105, 60 S.W.3d 443 (2001). Once the moving party has established a *prima facie* entitlement to summary judgment, the

---

[1] Jackson does not appeal the trial court's finding that Ark. Code Ann. § 16-22-310 is not unconstitutional.

opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Spears v. City of Fordyce*, 351 Ark. 305, 92 S.W.3d 38 (2002).

■ On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypothesis might reasonably be drawn and reasonable minds might differ. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000).

### I. Claims Against Mullen

Jackson argues that issues of material fact exist as to whether section 16-22-310 bars him from maintaining his cause of action against Mullen for legal malpractice for failing to perfect his lien.

### A. The Privity Requirement

Ark. Code Ann. § 16-22-310(a) provides:

> (a) No person licensed to practice law in Arkansas and no partnership or corporation of Arkansas licensed attorneys or any of its employees, partners, members, officers, or shareholders shall be liable to persons not in privity of contract with the person, partnership, or corporation for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by the person, partnership, or corporation, except for:
>
> (1) Acts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations; or
>
> (2) Other acts, omissions, decisions, or conduct if the person, partnership, or corporation was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action. For the purposes of this subdivision, if the person, partnership, or corporation:

(A) Identifies in writing to the client those persons who are intended to rely on the services, and

(B) Sends a copy of the writing or similar statement to those persons identified in the writing or statement,

then the person, partnership, or corporation, or any of its employees, partners, members, officers, or shareholders may be held liable only to the persons intended to so rely, in addition to those persons in privity of contract with the person, partnership, or corporation.

■ We have stated that the plain language of section 16-22-310 requires the plaintiff to have direct privity of contract with the person, partnership, or corporation he or she is suing for legal malpractice. *Nielsen v. Berger-Nielsen*, 347 Ark. 996, 69 S.W.3d 414 (2002); *Madden v. Aldrich*, 346 Ark. 405, 58 S.W.3d 342 (2001); *McDonald v. Pettus*, 337 Ark. 265, 988 S.W.2d 9 (1999). Privity of contract is defined as "that connection or relationship which exists between two or more contracting parties." *Swink v. Ernst & Young*, 322 Ark. 417, 420-21, 908 S.W.2d 660 (1995) (citing *Black's Law Dictionary* 1079 (5th ed. 1979)). We have narrowly construed the privity requirement to require direct privity between the plaintiff and the attorney or entity to be held liable for legal malpractice. *McDonald, supra; Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996). In *Clark*, we stated that "the language of this section [16-22-310(a)] is precise and clear and reveals that the contract contemplated by the statute relates to a contract for professional services performed by the attorney for the client." 323 Ark. at 386.

Jackson argues that a material factual dispute remains as to whether he was in privity with Mullen, or in other words, whether he had a contract with Mullen for professional services. He argues that Mullen acted as his attorney by drafting the Agreement and by adding material provisions to the Agreement that he had requested. Jackson also argues that since Mullen drafted the Agreement which purported to perfect a lien to benefit him, she should have taken affirmative steps to clarify the scope of her representation.

During Jackson's deposition, he was asked why he thought Mullen was his attorney. Jackson replied:

I had already been actively involved in Ace Sports Management, and I had pretty much agreed to the deal already, and giving the rest of the capital to Elbert Crawford, so he said, . . . "Chantel basically is our lawyer. Let us go ahead and talk to Dr. Hargrove." Basically that was it.

Jackson stated that he had telephone conversations with Mullen concerning the lien. He stated that, on a couple of occasions, he asked Mullen if she filed the lien. Jackson stated that Mullen told him "that she had to get back to me because she was talking to somebody" about the lien. In addition, Jackson stated that Mullen told Rothman that she would perfect the lien.[2]

In her affidavit, Mullen stated that Crawford was her "personal client in the fall of 1997 and early spring of 1998 regarding certain legal matters, including Ace Sports Management." Mullen maintained that she "solely represented Elbert Crawford." Mullen also stated that she never provided legal services for Jackson in connection with the Ace Agreement. She also stated that she never had a contract with Jackson to provide professional services in connection with the Ace Agreement. Mullen further stated that she thought "Rothman was [Jackson's] lawyer or consultant." Mullen acknowledged that, after the events relevant to the present case, Jackson hired her to be his lawyer. She stated that Jackson hired her "in connection with a separate and unrelated transaction when he purchased a [business] in late 1998 or 1999."

■ The dispute between Mullen and Jackson as to whether Mullen told Jackson she would file his lien, and as to whether Mullen told Rothman she would file Jackson's lien, presents a genuine issue of material fact which should have been submitted to the jury. We agree with Jackson's argument that there are material facts in dispute regarding the issue of privity. Accordingly, we reverse the part of the trial court's order which found that there

---

[2] On appeal, the appellees argue: "To the extent Jackson claims he was told by Rothman that Mullen told him (Rothman) she would file the lien, such evidence is double hearsay — Jackson repeating what Rothman told him is one level of hearsay, and Rothman repeating what Mullen allegedly told him is a second level." We note that the appellees failed to make this argument before the trial court. We have repeatedly stated that we will not address arguments raised for the first time on appeal. *Vanderpool v. Pace*, 351 Ark. 630, 97 S.W.3d 404 (2003).

were no genuine issues of material fact regarding the issue of whether Jackson had privity with Mullen.

### 1. *Indirect Privity*

Jackson acknowledges that the court has previously stated that "privity" under the statute means "direct" privity and not "indirect" privity. However, he argues:

> It seems more correct to state that "privity" arises, for the purposes of the statute, when an attorney–client relationship has been formed (expressly or implicitly), and not when a "contract for professional services" is formed, if such a phrase refers to an express, written agreement.

> It is possible, if not probable, that a jury of Jackson's peers would conclude that an attorney–client relationship existed as between Jackson and Mullen on the facts of this case. This relationship, though not expressly evidenced by a written contract, should satisfy the privity requirement. This fact is a reason why the trial court erred in granting the appellees' summary judgment. The conclusion that an attorney–client relationship existed as between Jackson and Mullen satisfies the privity requirement.

The appellees argue that the court should reject this argument because "'attorney–client relationship' and 'privity of contract' are not interchangeable under the statute." The appellees state:

> For example, a bare attorney–client relationship existed in *Clark*, as the attorney had previously represented the plaintiff. *Clark*, 323 Ark. at 383. However, it was the absence of privity of contract between the attorney and plaintiff – *i.e.*, "a contract for professional services performed by the attorney for the client" – that barred plaintiff's claims. *Id.* at 386-88.

■ The appellees are correct. Again, we have made it clear that direct privity is required under section 16–22–310(a)(1). A plaintiff may not substitute an "attorney–client relationship" requirement for the privity requirement.

■ Jackson also argues: "[G]iven Jackson's intimate involvement with Ace Sports Management, LLC (e.g., forty percent owner and its only capital contributor), he can 'stand in the shoes' of the LLC because it was in direct privity of contract with Mullen." We

disagree. In *McDonald, supra*, we made it clear that under the law-yer–immunity statute, a plaintiff must be in direct privity with the attorney or entity being sued for legal malpractice. In that case, the testator's children brought a legal malpractice action against the attorney who drafted the codicil to the testator's will. *Id.* The children argued that they satisfied the privity requirement because "they were in privity with the decedent . . . who in turn was in privity with [the decedent's attorney.] Similarly, in the present case, Jackson argues that he has satisfied the privity requirement because he was in privity with Ace, which in turn was in privity with Mullen. As we previously stated in *McDonald*, "We find no basis for this argument of indirect privity in the plain language of the lawyer–immunity statute or in our cases interpreting the Act." 337 Ark. at 272.

### 2. Exceptions to the Privity Requirement

■ If a plaintiff does not have privity with an attorney, the attorney may still be liable to the plaintiff if the plaintiff can prove an exception to the privity requirement. *See McDonald, supra.* No privity is required for "[a]cts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations." Ark. Code Ann. § 16-22-310(a)(1). Since Jackson has not asserted claims for fraud or intentional misrepresentations, this section is inapplicable. The second exception to the privity requirement provides:

> (2) Other acts, omissions, decisions, or conduct if the person, partnership, or corporation was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action. For the purposes of this subdivision, if the person, partnership, or corporation:
> (A) Identifies in writing to the client those persons who are intended to rely on the services, and
> (B) Sends a copy of the writing or similar statement to those persons identified in the writing or statement, then the person, partnership, or corporation or any of its employees, partners, members, officers, or shareholders may be held liable only to the persons intended to so rely, in addition to those persons in privity of contract with the person, partnership, or corporation.

§ 16-22-310(a)(2).

Jackson argues that a material factual dispute remains as to whether an exception to the privity requirement applies. Jackson first states that the court has not defined the scope of the intent requirement of section 16-22-310. He argues:

> The issue is whether the third-party must be subjectively aware that he is to benefit from the rendition of professional services, or whether it is only the attorney servicing a client who must be subjectively aware that his services are to benefit a third-party. Stated differently, is it only the attorney's awareness of an intent to benefit third parties that matters for purposes of applying the exception to the privity requirement, or must a third-party have an awareness that he or she is going to benefit from a transaction?

The appellees state that "there is nothing 'subjective' in the requirements of § 16-22-310 -- the statute requires a writing identifying the third-party, not just by name, but also as 'a person who was intended to rely on the [attorney's] services.' *Swink*, 322 Ark. at 422." In *Swink*, the court interpreted the accountant-immunity statute, which is analogous to the attorney-immunity statute. The court held that the exception to the privity requirement did not apply in that case because "Ernst & Young indisputably never identified Swink, Jr., in writing, or otherwise, as a person who was intended to rely on the accounting firm's services. Nor did Swink, Jr., allege in his complaint that Ernst & Young sent him a copy of a statement announcing such intent." *Swink*, 322 Ark. at 422.

In the present case, Jackson was never identified as a person who was intended to rely on Mullen's professional services. Jackson was a party to the Agreement, but there is nothing in the Agreement which indicates that Jackson should rely on Mullen for professional services, including, but not limited to, the filing of Jackson's lien.

Still, Jackson argues that our holding in *McDonald* supports his argument that the Agreement was a "writing to the client" for the purposes of section 16-22-310(a)(2)(B). In *McDonald, supra,* the children of the decedent argued that they were not barred from recovering because an exception to the privity requirement applied to their case. The children argued that the codicil drafted by Mr. Pettus for the decedent was a "writing to the client." The

court did not, as Jackson contends, state that the codicil was a "writing to the client" for the purposes of section 16-22-310(a)(2)(B). Rather, the court deemed it unnecessary to address the issue of whether the codicil was a "writing to the client" because there was no evidence in the record that the attorney sent the codicil to the children. The court wrote:

> Even if we were to assume that Mr. Pettus was "aware that a primary intent" of drafting the codicils was to "benefit or influence the" children, and that the codicil was a "writing to the client" identifying "those persons who are intended to rely on the services," there is no evidence in the record that Mr. Pettus ever sent the codicil to the children as required by section 16-22-310(a)(2)(B).

*McDonald*, 337 Ark. at 275.

In the present case, we have already determined that Jackson was never identified as a person who was intended to rely on Mullen's professional services; thus, the Agreement was not a "writing to the client" for the purposes of section 16-22-310(a)(2)(A) (Supp. 1993). Since we have determined that the Agreement was not a "writing to the client," it is unnecessary for us to address the issue of whether the Agreement was "sent" to Jackson for the purposes of section 16-22-310(a)(2)(B). We affirm the part of the order granting summary judgment to the extent that the trial court held that the exceptions to the privity requirement of Ark. Code Ann. § 16-22-310 are inapplicable in the present case.

## Estoppel

Jackson argues that the trial court erred when it failed to recognize that questions of fact remain as to whether Mullen owed a duty to Jackson to properly render her professional services. Jackson states:

> Because the facts clearly show that Jackson detrimentally relied upon the conduct of Mullen, a question of material fact is presented as to whether she is estopped from arguing that she owed no duty to Jackson. Mullen's conduct created a justifiable belief in Mr. Jackson that she was acting on his behalf, and with his interests in mind, when she inserted material provisions into the Agreement,

and when she agreed to file the lien and told Jackson that she was in the process of talking to people about the lien. At a minimum, reasonable minds could differ upon a complete examination of the facts at bar on the issue of whether Mr. Jackson justifiably relied to his detriment on the acts and omissions of Mullen.

The appellees argue that Jackson's estoppel argument is procedurally barred because he failed to obtain a ruling on this argument from the trial court. Jackson contends that the trial court did rule on the estoppel argument since it granted summary judgment in favor of the appellees on all claims and found that there was no genuine issues as to any material fact.

■ Jackson's contention is well-taken. We note that the order granting summary judgment stated that "[t]here is no genuine issue as to *any* material fact." (Emphasis added.) Thus, Jackson has properly preserved this issue for appeal.

■ Still, the trial court properly dismissed Jackson's estoppel argument. The appellees point out that Jackson's estoppel argument is nothing but an attempt to circumvent section 16-22-310. We agree. Jackson is attempting to bypass the privity requirement of section 16-22-310 by calling his claim something other than negligence. This he cannot do. Jackson asserts an estoppel claim "which necessarily had to arise" from Mullen's alleged negligence as Jackson's attorney. *See Nielsen*, 347 Ark. at 1008. Using a theory of estoppel, Jackson argues that Mullen is estopped from claiming she owed no duty to Jackson. However, in the present case, Mullen would owe no duty to Jackson to file his lien unless, as Jackson's attorney, she was in privity with Jackson. *See Clark*, 323 Ark. at 390. We affirm the trial court's dismissal of Jackson's claim of estoppel against Mullen.

### Claims Against Ivory and Ivory Law Firm
### Respondeat Superior

■ Jackson argues that the trial court erred when it dismissed his claim of vicarious liability, under a theory of *respondeat superior* against Ivory. The appellees argue that the trial court properly dismissed Jackson's vicarious liability claim against Ivory because no employee-employer relationship existed between Mul-

len and Ivory. Under the doctrine of *respondeat superior*, an employer may be held vicariously liable for the tortious conduct of an employee if the evidence shows that such conduct was committed while the employee was acting within the scope of employment. *See St. Joseph's Reg'l Med. Ctr. v. Munos*, 326 Ark. 605, 612, 934 S.W.2d 192 (1996).

Ivory is a lawyer who has been in private practice in Little Rock for over twenty years. During the fall of 1997 and the spring of 1998, Mullen was in private practice, and she was physically located in the same office facility as Ivory. The appellees maintain that Mullen "carried on her law practice in the same office facility as Ivory," and that "[t]here was no partnership agreement between them." The appellees state that "Mullen was only an employee of Ivory for certain services – clerical support, legal research, and drafting documents for Ivory on his cases, and maintaining Ivory's database." Further, the appellees state:

> Mullen was not an employee of Ivory, and did not act as his employee with regard to her own private law practice where she represented her own personal clients like Crawford. Those personal clients were not clients of Ivory, who did not provide legal services for them. Ivory also did not receive any payment or compensation from Mullen's clients, who made their payments to Mullen. Mullen was not an employee of Ivory concerning any of these events described in Jackson's Complaint. Instead, Crawford was Mullen's personal client and she solely represented him regarding his activities with Ace Sports Management. All billings and payments for legal services were by Mullen personally as the lawyer for Crawford, and Ivory did not receive any of those payments.
>
> Ivory was never hired by nor rendered any legal services to Crawford, Jackson, or any person concerning the transactions described in Jackson's Complaint. Ivory never had any conversations with Jackson about any of the matters described in the Complaint, which Jackson admitted.

In his affidavit, Ivory stated that "[t]here were other instances where both of us would work on a particular case on behalf of a client, but that was not true in connection with Elbert Crawford or Ace Sports Management because I had no involvement with them and they were personal clients of Chantel Mullen

in her individual law practice." Ivory further stated that he "had a passing awareness" that Mullen was providing legal services to Crawford, and that Crawford had "some connection" with Ace.

Jackson contends that Ivory was Mullen's employer and points out that Mullen submitted a brief on behalf of the Ivory Law Firm to the court of appeals. Jackson states:

> . . . Mullen, with Ivory's blessing, represented to the public and to the Arkansas Courts that she was employed by the Ivory Law Firm. The public cannot be expected to decipher Mullen's scope of employment when Ivory, himself, held her out to the Arkansas Court of Appeals as being a member of the Ivory Law Firm.

Included in Jackson's Addendum is a copy of a brief that was filed in the Arkansas Court of Appeals. The attorneys listed on the cover of the brief appear as follows:

> Chantel Mullen (95-246)
> George S. Ivory, Jr. (83-006)
> Ivory Law Firm
> 806 West Second Street
> Little Rock, Arkansas 72201

■ We note that the names of individual counsel listed on a brief, which was filed in 1999, offer little support for Jackson's argument that Mullen was a member of the Ivory Law Firm at the time Mullen: (1) prepared the Agreement; (2) made changes to the Agreement; and (3) stated that she would file Jackson's lien. However, the brief filed in 1999, coupled with Ivory's own admission that Mullen was "an employee of Ivory for certain services," does offer support for Jackson's argument that Mullen was a member of the Ivory Law Firm.[3] Thus, we agree with Jackson's

---

[3] We note that Jackson's deposition contains a reference to Exhibit 4-A, which according to Jackson is a "fax page" from Mullen. The fax page included in the record shows a letterhead for the Ivory Law Firm. Under the name, address, and phone number of the firm, two attorneys are listed: George S. Ivory, Jr., and Chantel Mullen. The fax page appears to have been transmitted to Jackson and Crawford at Jackson's office on March 10, 1998. While the fax page could support Jackson's argument that a material factual dispute exists as to whether Mullen and Ivory had an employee-employer relationship, we cannot consider this evidence as Jackson did not include it in his Addendum. Although we find, in examining the record, Exhibit 4-A, we are not obliged

contention that there is a genuine issue of material fact regarding whether Mullen and Ivory had an employee–employer relationship at the time of Mullen's alleged negligence, and whether, if Mullen was Ivory's employee, she was working within the scope of her employment with Ivory when she performed professional services for Ace. Accordingly, there is a genuine issue of material fact as to whether Ivory can be vicariously liable under a theory of *respondeat superior* for Mullen's alleged negligence. Therefore, we reverse the trial court's order granting summary judgment in favor of Ivory under the theory of *respondeat superior.*

## Negligent Supervision

Finally, Jackson argues that the trial court erred in dismissing his negligent supervision claims against Ivory. The appellees again argue that this claim must fail because Jackson failed to prove the existence of an employee–employer relationship between Mullen and Ivory.

■ Under the theory of negligent supervision, employers are subject to direct liability for the negligent supervision of employees when third parties are injured as a result of the tortious acts of employees. *Madden, supra; American Auto. Auction v. Titsworth*, 292 Ark. 452, 730 S.W.2d 499 (1987). Liability for negligent supervision is based upon the unique relationship *between employer and employee. Madden, supra* (emphasis added). We have stated that there is a genuine issue of material fact regarding whether Mullen and Ivory had an employee–employer relationship at the time of Mullen's alleged negligence; however, even if we were to assume that Mullen and Ivory had an employee–employer relationship at the time of Mullen's alleged negligence, Jackson's argument would still fail.

■ Under a theory of negligent supervision, the employer's liability rests upon proof that the employer knew or, through the exercise of ordinary care, should have known that the employee's conduct would subject third parties to an unreasonable

to consider it because we do not go to the record to reverse. *Montgomery v. Butler*, 309 Ark. 491, 834 S.W.2d 148 (1992).

risk of harm. *Madden, supra.* As with any other negligence claim, to prove negligent supervision, a plaintiff must show that the employer's conduct was a proximate cause of the injury and that the harm to third parties was foreseeable. *Id.* It is not necessary that the employer foresee the particular injury that occurred, only that he or she reasonably foresee an appreciable risk of harm to others. *Id.*

Jackson argues only that Ivory failed to properly supervise Mullen. He does not argue that Ivory knew or should have known that Mullen's alleged conduct would subject third parties to an unreasonable risk of harm. Instead, Jackson argues that the trial court should be reversed because in *Madden*, this court "clearly held that the statute applies to the rendition of professional services, and Jackson has not premised his claim against Ivory on professional services but on Ivory's failure to properly supervise Chantel Mullen." He further states: "Here, as in *Madden*, the actions or omissions upon which this claim is based do not fall within the parameters of professional services."

The present case is easily distinguishable from *Madden*. In that case, the "acts or omissions" to which we referred involved the employer attorney's failure to act when she suspected that the employee attorney was stealing funds from clients. The court stated: "It does not require an attorney's professional skills to suspect that another attorney may be stealing money, either from the firm or from clients. Accordingly, we hold that the immunity provided in section [ ] 16-22-310 is not available under the facts and circumstances of this case." 346 Ark. at 414.

 In the present case, Jackson alleges that Ivory failed to supervise Mullen and that "[b]ecause of this failure, Mullen never properly secured for Jackson a first priority security interest. . . ." Perfecting liens is one of the many professional services rendered by attorneys. The alleged failure to perfect a lien is "in connection with professional services" performed by Mullen. Moreover, regardless of how Jackson characterizes his claim, if Ivory negligently failed to supervise Mullen and, as a result, Mullen failed to perfect the lien, Ivory's negligence would be "in connection with professional services." As such, Ivory would be afforded immunity under section 16-22-310. We affirm the trial court's order

granting summary judgment in favor of Ivory on the allegation of negligent supervision.

In sum, we reverse the part of the order granting summary judgment to the extent that the trial court held that there were no genuine issues of material fact regarding the issue of whether Jackson had privity with Mullen. We affirm the part of the order granting summary judgment to the extent that the trial court held that there were no genuine issues of material fact regarding whether exceptions to the privity requirement applied to this case. We affirm the part of the order granting summary judgment which dismissed Jackson's claim of estoppel against Mullen.

We reverse the part of the order granting summary judgment in favor of Ivory on the *respondeat superior* claim. We affirm the part of the order granting summary judgment in favor of Ivory on the negligent supervision claim. We reverse the part of the order granting summary judgment in favor of the Ivory Law Firm on the *respondeat superior* claim. We affirm the part of the order granting summary judgment in favor of the Ivory Law Firm on the negligent supervision claim.

Affirmed in part, reversed and remanded in part.

IMBER, J., concurring.

CORBIN, J., not participating.

ANNABELLE CLINTON IMBER, Justice, concurring. I agree with the majority that the circuit court erred in granting summary judgment; however, I conclude that Jackson failed to preserve his estoppel argument for appeal. The majority concludes that by granting summary judgment in favor of appellees, the trial court effectively ruled on Jackson's estoppel argument. It is well settled that to preserve an argument for appeal, the appellant must obtain a ruling below. *Arkansas State Racing Comm'n v. Ward, Inc.*, 346 Ark. 371, 57 S.W.3d 198 (2001). The circuit court did not rule on Jackson's estoppel argument. Thus, the argument has not been preserved for appellate review.