Natasha SAINE *v.* COMCAST CABLEVISION of ARKANSAS, INC.

02-1388 126 S.W.3d 339

Supreme Court of Arkansas
Opinion delivered October 23, 2003

494

*Walker & Dunklin*, by: *Woodson Walker*; and *Eubanks, Welch, Baker & Schulze*, by: *J. G. Schulze*, for appellant.

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *Carolyn B. Witherspoon, Donna Galchus*, and *Janie W. Fenton*, for appellee.

ANNABELLE CLINTON IMBER, Justice. This appeal arises from the rape and attempted murder of Appellant Natasha Saine by Ceotis Franks, who was employed by Appellee Comcast Cablevision of Arkansas (Comcast) at the time of the attack. Ms. Saine appeals from a summary judgment that was granted to Comcast on her claims of negligent hiring, negligent supervision, and negligent retention. We affirm the trial court on the issue of negligent hiring. However, we hold that there are genuine issues of material fact regarding the negligent-supervision and negligent-retention claims; therefore, we reverse and remand on those claims.

On July 19, 1996, Natasha Saine arrived home for lunch to find a Comcast truck at her house and Ceotis Franks, dressed in his Comcast uniform, climbing down the cable pole in her yard. Ms. Saine allowed Franks, as a cable installer and technician, to enter her home and adjust her cable reception. After making the adjustments, he stepped outside; when he returned, Franks pulled a knife on Ms. Saine and forced her into a bedroom where he raped her. Afterward, Franks unsuccessfully attempted to kill Ms. Saine. First, he hit her in the head with a blowtorch canister, and then he bound her hands behind her back, tied her feet together, and dropped her into a bathtub filled with water. Once she was in the water, he slit her throat with a knife he had retrieved from the kitchen, and then he plugged a lamp into an electrical socket and tossed it into the tub to electrocute her. She was still alive, so he held her head under water for more than a minute in an attempt to drown her. When all other attempts to kill her had failed, he forced her, bound, into a closet, and set fire to her carpet with his blowtorch. Miraculously, Ms. Saine lived, and Franks was convicted of rape, kidnapping, arson, and attempted murder. *See Franks v. State*, CACR 97-1483, slip op. (Oct. 28, 1998).

On July 14, 1997, Ms. Saine filed this action against Comcast alleging claims of *respondeat superior*, negligent hiring, negligent retention, and negligent supervision. Various other claims were alleged against Comcast and other defendants affiliated with Comcast, but those other claims and other defendants are not at issue in this appeal. On July 6, 1999, Comcast filed a motion for partial summary judgment as to the four initial claims. Comcast contended that there was no information available to them before or

after Franks was hired that would have put Comcast on notice that Franks might commit violent acts against customers.

On July 28, 1999, the trial court granted Comcast's motion for partial summary judgment, and an order was entered to that effect on August 30, 1999. In coming to its decision, the trial court found that Franks was not acting within the scope of his employment when he assaulted Ms. Saine, and that Comcast did not and could not have known that Franks had a propensity for violence. Other claims against Comcast continued to be ongoing, and on November 2, 2001, Ms. Saine filed a motion to vacate or revise the prior order granting partial summary judgment. On May 28, 2002, the trial court entered an order dismissing with prejudice the other pending claims against Comcast, and a second order denying Ms. Saine's motion to vacate the partial summary judgment. These orders ended the litigation below, and Ms. Saine timely filed her notice of appeal. On appeal, Ms. Saine has abandoned her *respondeat superior* claim, but argues that the trial court erred in granting summary judgment on her claims of negligent hiring and negligent supervision/retention.

 Summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Laird v. Shelnut*, 348 Ark. 632, 74 S.W.3d 206 (2002). The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. *Id.*; *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). Once the moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Flentje v. First Nat'l Bank of Wynne, supra*. On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Laird v. Shelnut, supra*; *Wright v. City of Monticello*, 345 Ark. 420, 47 S.W.3d 851 (2001). This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Laird v. Shelnut, supra*; *Pfeifer v. City of Little Rock*, 346 Ark. 449, 57 S.W.3d 714 (2001). Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Pfeifer v. City of Little Rock, supra*.

## Negligent Supervision/Retention

█ █ Arkansas recognizes the torts of negligent supervision and negligent retention. Under both theories of recovery, employers are subject to direct liability for their negligent supervision or negligent retention of employees when third parties are injured as a result of the tortious acts of those employees. *See, e.g., Regions Bank & Trust v. Stone Co. Skilled Nursing Facility, Inc.,* 345 Ark. 555, 49 S.W.3d 107 (2001); *Madden v. Aldrich,* 346 Ark. 405, 58 S.W.3d 342 (2001); *Porter v. Harshfield,* 329 Ark. 130, 948 S.W.2d 83 (1997); *St. Paul Fire & Marine Ins. Co. v. Knight,* 297 Ark. 555, 764 S.W.2d 601 (1989); *American Auto. Auction, Inc. v. Titsworth,* 292 Ark. 452, 730 S.W.2d 499 (1987). Under each of these theories of recovery, the employer's liability rests upon proof that the employer knew or, through the exercise of ordinary care, should have known that the employee's conduct would subject third parties to an unreasonable risk of harm. *Jackson v. Ivory,* 353 Ark. 847, 120 S.W.3d 587 (2003) (citing *Madden v. Aldrich, supra*); *see also St. Paul Fire & Marine Ins. Co. v. Knight, supra.* As with any other negligence claim, a plaintiff must show that the employer's negligent supervision or negligent retention of the employee was a proximate cause of the injury and that the harm to third parties was foreseeable. *See Jackson v. Ivory, supra; St. Paul Fire & Marine Ins. Co. v. Knight, supra.* It is not necessary that the employer foresee the particular injury that occurred, but only that the employer reasonably foresee an appreciable risk of harm to others. *Jackson v. Ivory, supra; Madden v. Aldrich, supra.*

In *American Auto. Auction, Inc. v. Titsworth, supra,* we affirmed a jury verdict of liability on a theory of negligent supervision, where two bouncers hired by an auction company had severely beaten two auction patrons in the process of forcibly removing them from an auction. In *Titsworth,* the president of the defendant auction company had told one of the plaintiffs to leave the premises, but then watched him walk into the auction area. *See American Auto. Auction, Inc. v. Titsworth,* 292 Ark. 452, 730 S.W.2d 499 (1987). In affirming the jury's verdict against the defendant corporation, we reasoned that the corporation's president knew or should have known that his employees might forcibly eject the plaintiffs, since that was the job they had been hired to perform. *Id.* We held that the corporation was liable for negligent supervision

because the president did not exercise any supervisory care whatsoever to ensure the safety of the plaintiffs:

> Clearly, an employer who hires two ex-convicts, one of whom is normally drinking, and entrusts to them the job of forcibly ejecting patrons, has a duty to exercise reasonable care to avoid harm to those patrons by exercising supervisory care when the employer knows, or by the exercising of reasonable diligence ought to know, that such employees are about to forcibly eject a patron.

*Id.* at 455, 730 S.W.2d at 501.

This is in contrast to *Regions Bank & Trust v. Stone Co. Skilled Nursing Facility, Inc., supra,* in which we held that an employer was not liable under the theory of negligent supervision for the sexual abuse of one of its patients by a newly-certified nursing assistant, when the abuse was not foreseeable:

> To find a cause of action under negligent supervision of an employee, one must find that the natural and probable consequence of negligent supervision in allowing a newly-hired and untried nurse's aide to care for an immobile, semi-comatose female patient is sexual abuse by that nurse's aid. As discussed, absent some form of notice that the employee posed a danger, such an act is not foreseeable. Here, there was no indication of a prior criminal record or patient abuse. There was nothing to put Stone County Skilled Nursing Facility on notice that [the employee] might do such a thing as sexually assault a patient. The fact that [the employee] was an inexperienced CNA does not give rise to a reasonable probability that he would commit criminal sexual assault. On this basis, it was not foreseeable that [the employee] would commit criminal sexual assault.

*Id.* at 569, 49 S.W.3d at 116 (emphasis added).

Similarly, we upheld summary judgment for an employer on a negligent retention claim, where the plaintiff presented no evidence that the employer was on notice that a radiology technician might commit a sexual assault against a patient. *See Porter v. Harshfield,* 329 Ark. 130, 948 S.W.2d 83 (1997).

In the instant case, Ms. Saine offered the deposition testimony of Jeanie Leonard, a Comcast customer for whom Ceotis Franks installed cable over a year prior to the assault on Ms. Saine.

Ms. Leonard stated that when Franks installed her cable, he made inappropriate comments about her attractiveness, saying she had beautiful hair and eyes and "some fine looking legs." He also grunted and placed his hand on his crotch while "sneering" at her, and took all day to complete an installation that should have taken less than an hour. Later that night, after the cable installation, Ms. Leonard's dogs were barking and she got up out of bed to investigate. Her dogs ran across her yard, chasing something or someone, then she heard a car start up and drive away. When she checked her windows, she found several of them unlocked, though she always kept her windows locked and, in fact, some of them were painted shut. Ms. Leonard stated that, while she did not see Franks unlock the windows, she knew that he was the only person who could have done so.

Ms. Leonard stated she was frightened and thought Franks had left the windows unlocked so he could return and let himself inside her house. This prompted her to call Comcast the following morning, when she complained first to a woman who answered the phone, then to a supervisor, then finally to a manager who put her on hold and never returned to the phone. Ms. Leonard stated that she gave her name and address, and told the Comcast employees about Franks, including Franks's inappropriate comments, the length of time it took him to install her cable, and that he had unlocked her windows. She stated that she made several more attempts to call Comcast over the next two weeks, but was unable to get through, and no Comcast employee ever called her back, in spite of the fact that she had given her name and address when she initially relayed her complaint.

Ms. Saine presented evidence that Franks's supervisor, Gary Williamson, would have terminated an employee if he was told the employee made inappropriately flirtatious remarks to a customer. She also presented evidence that there was no system in place for recording or acting upon complaints about employees, and that there was no record in Franks's file of Ms. Leonard's complaints to the three Comcast employees the day after Franks installed her cable.

Comcast argues that Ms. Leonard's testimony is similar to the lack of knowledge found in *Porter v. Harshfield, supra*, and that Comcast could not have foreseen that Franks would have been predisposed to commit a violent act. However, this case is clearly distinguishable from *Porter v. Harshfield, supra*, in that evidence was

presented that Comcast was put on notice that Franks had made inappropriate sexual comments to a female customer and that he had unlocked that female customer's windows. Comcast takes issue with Ms. Leonard's deposition testimony, attempting to show that there are inconsistencies and contradictions in her two depositions. However, the credibility of Ms. Leonard's testimony is an issue to be resolved by a factfinder rather than a basis for summary judgment. Viewing Ms. Leonard's deposition in the light most favorable to Ms. Saine and resolving all doubts and inferences against Comcast, we hold that there is an issue of fact as to whether or not Comcast was on notice that Ceotis Franks might harm a third party. As stated in *Jackson v. Ivory, supra,* and *Madden v. Aldrich, supra,* it is not necessary that the particular harm to Ms. Saine be foreseeable, but only that Comcast be on notice that it was reasonably foreseeable that an appreciable risk of harm to third parties could be caused by negligent supervision or retention of Franks.

■ Because we hold that an issue of fact exists as to whether or not Comcast was on notice that Franks might harm a female customer, we reverse the trial court's summary judgment on the negligent-supervision and negligent-retention claims.

### Negligent Hiring

Ms. Saine states that an employer has a duty to conduct a reasonable reference check of employees, yet cites no authority whatsoever for that proposition. She then cites extra-jurisdictional cases to illustrate situations in which courts have held employers liable for the criminal actions of their employees, because sufficient checks were not made before hiring the employees. However, our decisions in *Porter v. Harshfield, supra,* and *St. Paul Fire & Marine Ins. Co. v. Knight,* 297 Ark. 555, 764 S.W.2d 601 (1989) are on point, and they belie Ms. Saine's claim that Comcast negligently hired Ceotis Franks.

In *Porter v. Harshfield,* we cited to *St. Paul Fire & Marine Ins. Co. v. Knight, supra,* as dispositive to the issue of liability for negligent hiring. In that case, a patient alleged that a hospital's background check on an employee was inadequate because a proper check would have shown he was not qualified for his position as psychiatric technician. *See St. Paul Fire & Marine Ins. Co. v. Knight,* 297 Ark. 555, 764 S.W.2d 601 (1989). The hospital's investigation showed the technician had received apprentice

counselor's credentials, supervised a summer playground staff, completed a work-study program, and received an honorable discharge from the Air Force. *Id*. The employee had no criminal record and no history of violent acts or sexual misconduct. *Id*. We held that there was no rational basis on which the hospital could have foreseen the employee's violence. *Id*.

■ In support of this point on appeal, Ms. Saine, like the appellant in *St. Paul Fire & Marine Ins. Co.*, states that Comcast's background check on Franks was inadequate, and yet she offers no evidence for this conclusion. Instead, she offers only the opinion of Gerald Whitney Smith, her expert on human resources management, that the background check was inadequate. However, Mr. Smith's deposition testimony revolved around Ceotis Franks's qualifications as an unsupervised cable installer, and he provided no testimony about what might have been discovered if an "adequate" background check had been conducted. It is irrelevant to the negligent hiring claim that Franks might not have been up to the level of expected performance in his previous jobs or in his position as an installer with Comcast. Our holding in *St. Paul Fire & Marine Inc. Co., supra*, requires Ms. Saine to present proof of something in Franks's history that (1) would have been found by an "adequate" background check, and (2) would have put Comcast on notice that Franks was predisposed to commit a violent act. No such proof was offered. There must be a direct causal connection between an inadequate background check and the criminal act for which the appellant is attempting to hold the employer liable. As we stated in *Porter v. Harshfield, supra*:

> Porter claims that Dr. Harshfield should have inquired as to why [the employee] left Arkansas Children's Hospital; however, he has not abstracted any evidence or testimony to show what, if anything, Dr. Harshfield would have discovered had he conducted a background check that would have led him to believe that [the employee] was predisposed to commit sexual assault.

*Porter v. Harshfield*, 329 Ark. at 138, 948 S.W.2d at 87.

■ The same is true in this case. Comcast provided documentation that Franks had passed a pre-employment drug screen and had been honorably discharged from the military. Further, Comcast's background check of Franks showed experience in wiring and pole climbing, and checks with two previous employ-

ers gave no indication that Franks might be a risk to customers. Ms. Saine has failed to meet proof with proof on this issue and has not demonstrated that a material issue of fact exists, because she has shown nothing in Mr. Franks's background that could have alerted Comcast to the possibility that Franks was predisposed to commit a sexual assault. Thus, we affirm the trial court's grant of summary judgment on the negligent-hiring claim.

Affirmed in part, and reversed and remanded in part.